# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

UNITED FACULTY OF FLORIDA,

FLORIDA STATE UNIVERSITY
CHAPTER OF THE UNITED
FACULTY OF FLORIDA,

and

UNIVERSITY OF FLORIDA
CHAPTER OF THE UNITED
FACULTY OF FLORIDA,

        *Plaintiffs*,

       v.

BRIAN LAMB, in his official capacity
   as Chair of the Florida Board of
   Governors,

ALAN LEVINE, in his official capacity
   as Vice Chair of the Florida Board of
   Governors,

MANNY DIAZ JR., in his official
   capacity as Florida Commissioner of
   Education and a member of the
   Florida Board of Governors,

ASHLEY BELL BARNETT, in her
   official capacity as a member of the
   Florida Board of Governors,

JOHN BRINKMAN, in his official
   capacity as a member of the Florida
   Board of Governors and his official
   capacity as a member of the

Case No. 1:24-cv-136

University of Florida Board of Trustees,

TIMOTHY M. CERIO, in his official capacity as a member of the Florida Board of Governors,

AUBREY EDGE, in her official capacity as a member of the Florida Board of Governors,

PATRICIA FROST, in her official capacity as a member of the Florida Board of Governors,

CARSON GOOD, in his official capacity as a member of the Florida Board of Governors

EDWARD HADDOCK, in his official capacity as a member of the Florida Board of Governors,

KEN JONES, in his official capacity as a member of the Florida Board of Governors,

CHARLES H. LYDECKER, in his official capacity as a member of the Florida Board of Governors,

CRAIG MATEER, in his official capacity as a member of the Florida Board of Governors,

JOSE OLIVA, in his official capacity as a member of the Florida Board of Governors,

AMANDA J. PHALIN, in her official
capacity as a member of the Florida
Board of Governors,

ERIC SILAGY, in his official capacity
as a member of the Florida Board of
Governors,

PETER COLLINS, in his official
capacity as Chair of the Florida State
University Board of Trustees,

MAXIMO ALVAREZ, in his official
capacity as a member of the Florida
State University Board of Trustees,

KATHRYN BALLARD, in her official
capacity as a member of the Florida
State University Board of Trustees,

BRIDGETT BIRMINGHAM, in her
official capacity as a member of the
Florida State University Board of
Trustees,

JACKSON BOISVERT, in his official
capacity as a member of the Florida
State University Board of Trustees,

VIVIAN DE LAS CUEVAS-DIAZ, in
her official capacity as a member of
the Florida State University Board of
Trustees,

JORGE GONZALEZ, in his official
capacity as a member of the Florida
State University Board of Trustees,

JIM W. HENDERSON, in his official
capacity as a member of the Florida
State University Board of Trustees,

JUSTIN ROTH, in his official capacity
as a member of the Florida State
University Board of Trustees,

DEBORAH SARGEANT, in her
official capacity as a member of the
Florida State University Board of
Trustees,

BOB SASSER, in his official capacity
as a member of the Florida State
University Board of Trustees,

JOHN THIEL, in his official capacity as
a member of the Florida State
University Board of Trustees,

DREW WEATHERFORD, in his
official capacity as a member of the
Florida State University Board of
Trustees,

MORTEZA HOSSEINI, in his official
capacity as Chair of the University
of Florida Board of Trustees,

RAHUL PATEL, in his official
capacity as Vice Chair of the
University of Florida Board of
Trustees,

DAVID L. BRANDON, in his official
capacity as a member of the
University of Florida Board of
Trustees,

RICHARD P. COLE, in his official
capacity as a member of the
University of Florida Board of
Trustees,

CHRISTOPHER T. CORR, in his
official capacity as a member of the
University of Florida Board of
Trustees,

JAMES W. HEAVENER, in his official
capacity as a member of the
University of Florida Board of
Trustees,

SARAH D. LYNNE, in her official
capacity as a member of the
University of Florida Board of
Trustees,

DANIEL T. O'KEEFE, in his official
capacity as a member of the
University of Florida Board of
Trustees,

MARSHA D. POWERS, in her official
capacity as a member of the
University of Florida Board of
Trustees,

FRED S. RIDLEY, in his official
capacity as a member of the
University of Florida Board of
Trustees,

PATRICK O. ZALUPSKI, in his
official capacity as a member of the
University of Florida Board of
Trustees,

5

and

ANITA G. ZUCKER, in her official
    capacity as a member of the
    University of Florida Board of
    Trustees,

                    Defendants.

## **COMPLAINT**

1.      This case challenges a Florida statute that unlawfully bans arbitration of adverse personnel decisions for public university faculty. For decades, faculty in Florida's world-renowned public university system have relied upon arbitration by a neutral third party to protect their academic freedom and other bargained-for employment rights. Last year, the State of Florida upended those protections by banning such arbitration—purporting to invalidate existing contracts containing arbitration provisions and prohibiting future bargaining over arbitration.

2.      The Federal Arbitration Act ("<u>FAA</u>"), 9 U.S.C. § 1-16, reflects a longstanding federal policy favoring arbitration and preempts state laws that ban arbitration of particular types of claims or treat agreements to arbitrate differently from any other type of contract. Plaintiffs, who are unions representing Florida public university faculty, seek to vindicate their rights under federal law to enforce existing arbitration agreements and enter into new arbitration agreements with Florida public universities.

3.     Section 3 of Senate Bill 266 ("SB 266"), codified at Florida Statutes Section 1001.741(2) (the "Arbitration Ban"), purports to invalidate provisions in Plaintiffs' current Collective Bargaining Agreements (the "CBAs") granting public university faculty the right to arbitrate adverse personnel decisions before a neutral arbitrator. The Arbitration Ban also bars any future collective bargaining agreement from containing provisions for arbitration of such grievances. Because of this law, Florida public universities have refused to arbitrate grievances about critical personnel matters including termination and performance reviews, despite signing CBAs requiring such arbitration, and have indicated that arbitration cannot be a topic of bargaining in future negotiations. Florida's imposition of the Arbitration Ban on its public university system has thrown the process for resolving both personnel-related and broader contract-related grievances into disarray, undermining the enforceability of all of the protections and agreements established in public university CBAs and threatening both the livelihoods and the academic freedom of public university faculty.

4.     The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quotation marks omitted). It promotes the validity and enforcement of arbitration agreements by guaranteeing that provisions of a written contract that require arbitration to settle disputes arising from the contract are "valid, irrevocable

and enforceable." 9 U.S.C. § 2. For nearly 100 years, the Supreme Court has stead-fastly interpreted this provision as establishing a "national policy favoring arbitra-tion of claims that parties contract to settle in that matter," *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quotation marks omitted), invalidating numerous state laws that banned or burdened arbitration as preempted by the FAA. "The FAA's displace-ment of conflicting state law is now well established, and has been repeatedly re-affirmed." *Id*. (quotation marks omitted). "When state law prohibits outright the ar-bitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011).

5.     Because the Arbitration Ban is preempted and thus invalid, Defend-ants—the Florida Board of Governors and boards of trustees of the universities where Plaintiffs' members work—must respect Plaintiffs' and their members' con-tractual right to arbitrate personnel decisions before a neutral arbitrator. Defendants cannot rely upon the Arbitration Ban to force Plaintiffs to renegotiate the grievance procedures in operative CBAs during the current contractual term and cannot refuse to negotiate the inclusion of arbitration provisions during future CBA negotiations on the basis of the Arbitration Ban.

6.     Plaintiffs seek a declaration that the Arbitration Ban is invalid with re-spect to all CBAs governed by the FAA. Plaintiffs further seek a permanent

8

injunction requiring Defendants to arbitrate adverse personnel decisions before a neutral arbitrator, as required by any operative CBAs, as well as prohibiting Defendants from enforcing the Arbitration Ban, removing or seeking removal of arbitration provisions from any public university CBA, or relying on the Arbitration Ban in future contract negotiations.

## JURISDICTION AND VENUE

7.     This suit is brought pursuant to 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute … of any State … , subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

8.     This Court has jurisdiction under 28 U.S.C. § 1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. § 1343(3) to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution, and under 28 U.S.C. § 1343(4) to secure equitable or other relief for the protection of civil rights.

9.     This Court has jurisdiction under 28 U.S.C. § 1331 to hear cases where a plaintiff seeks equitable relief from state law on the ground that, under the Supremacy Clause of the Constitution, the law is preempted by a federal statute. *See, e.g.,*

*Shaw v. Delta Air Lines, Inc.*, 436 U.S. 85, 96 n.14 (1983); *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1261–62 (11th Cir. 2012).

10.     This Court similarly has the power to "declare the rights and other relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants are residents of the state of Florida, at least one Defendant resides in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

12.     Venue is proper in this division under Local Rule 3.1(A), as all Defendants are residents of Florida, at least one Defendant resides in Alachua County, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Alachua County.

## THE PARTIES

13.     Plaintiff United Faculty of Florida ("UFF") is a statewide affiliate and local chapter of the Florida Education Association ("FEA") representing more than 25,000 faculty, graduate employees, and academic professionals at all 12 Florida public universities, 16 state and community colleges, and four K-12 lab schools. UFF is certified by the Public Employee Relations Commission as the collective bargaining representative of faculty, graduate employees, and academic professionals employed by Florida State University and the University of Florida, in addition

to other public employers. UFF brings this lawsuit on behalf of itself and its members, who are being irreparably harmed by the Arbitration Ban and therefore have standing to sue in their own right.

14.   Plaintiff Florida State University Chapter of the United Faculty of Florida ("UFF-FSU") is a union representing 1,932 faculty employed by Florida State University ("FSU"). UFF-FSU is a local chapter of UFF and is affiliated with FEA, the National Education Association, the American Federation of Teachers, and the American Federation of Labor and Congress of Industrial Organizations. UFF-FSU, with the support of UFF, negotiates the CBA with the FSU Board of Trustees, represents faculty members in grievance proceedings under the CBA, and engages in other advocacy in support of higher education faculty and public education more generally. UFF-FSU brings this lawsuit on behalf of itself and its members, who are being irreparably harmed by the Arbitration Ban and therefore have standing to sue in their own right.

15.   Plaintiff University of Florida Chapter of the United Faculty of Florida ("UFF-UF") is a union representing 2,069 faculty employed by the University of Florida ("UF"). UFF-UF is a local chapter of UFF and is affiliated with FEA, the National Education Association, the American Federation of Teachers, and the American Federation of Labor and Congress of Industrial Organizations. UFF-UF, with the support of UFF, negotiates the CBA with the UF Board of Trustees,

represents faculty members in grievance proceedings under the CBA, and engages in other advocacy in support of higher education faculty and public education more generally. UFF-UF brings this lawsuit on behalf of itself and its members, who are being irreparably harmed by the Arbitration Ban and therefore have standing to sue in their own right.

16.    Defendant Brian Lamb serves as the Chair of the Florida Board of Governors. The Florida Board of Governors is a public agency, located in Tallahassee, that oversees the operation and management of the Florida university system's twelve institutions. Defendant Lamb is sued in his official capacity.

17.    The Board of Governors is established pursuant to Article IX, Section 7(d) of the Florida Constitution. The Board of Governors is responsible for public universities' implementation of Florida statutes, including the Arbitration Ban. *See* Fla. Stat. §§ 20.155(4)(a), 1001.706, 1001.705(2)(l). Indeed, the Legislature has provided that the Board of Governors "shall oversee the performance of state university boards of trustees in the enforcement of laws, rules, and regulations," Fla. Stat. § 1008.322(1), and gave the Board of Governors the power to "revoke or modify the scope of any power or duty it has delegated" to the boards of trustees, Fla. Stat. § 1001.706(11). If the boards of trustees do not comply with state law, the Board of Governors has a responsibility to compel the boards of trustees to do so and can ensure compliance through a variety of mechanisms. *See* Fla. Stat.

§§ 1008.322(5)(a) (withholding funding appropriated to the Board of Governors for disbursement to state universities), 1008.322(5)(b) (declaring "the state university ineligible for competitive grants disbursed by the Board of Governors"); Fla. Bd. of Governors Reg. 9.007 (vetoing annual board of trustee budgets).

18.     Defendant Alan Levine serves as the Vice Chair of the Florida Board of Governors. He is sued in his official capacity.

19.     Defendant Manny Diaz Jr. serves as the Florida Commissioner of Education and is a member of the Board of Governors. He is sued in his official capacity.

20.     Defendants Ashley Bell Barnett, John Brinkman, Timothy M. Cerio, Aubrey Edge, Patricia Frost, Edward Haddock, Carson Good, Ken Jones, Charles H. Lydecker, Craig Mateer, Jose Oliva, Amanda J. Phalin, and Eric Silagy serve as members of the Florida Board of Governors. They are sued in their official capacity.

21.     Defendant Peter Collins serves as the Chair of the FSU Board of Trustees. He is sued in his official capacity. Under Florida Law, Fla. Stat. § 1001.71, public university boards of trustees, as "part of the executive branch of state government," Fla. Stat. § 1001.71(3), have the power and duty to "establish[] the personnel program," covering tenure, disciplinary actions, complaints, appeals, and grievance procedures, for the university, Fla. Bd. of Governors Reg. 1.001(5)(a). The boards of trustees serve as "public employer[s] … for the purposes of collective bargaining." Fla. Bd. of Governors Reg. 1.001(5)(b). In its role as public employer, the FSU

13

Board of Trustees "negotiate[d] a [contractual] grievance procedure" with "a final and binding disposition by an impartial neutral" as its "terminal step," Fla. Stat. § 447.401, which the Arbitration Ban subsequently purported to nullify with respect to UFF-FSU and its members, *see* Fla. Stat. § 1001.741(2).

22.     Defendants Maximo Alvarez, Kathryn Ballard, Bridgett Birmingham, Jackson Boisvert, Vivian De Las Cuevas-Diaz, Jorge Gonzalez, Jim W. Henderson, Justin Roth, Deborah Sargeant, Bob Sasser, John Thiel, and Drew Weatherford serve as members of the FSU Board of Trustees. They are sued in their official capacity.

23.     Defendant Morteza Hosseini serves as the Chair of the UF Board of Trustees. He is sued in his official capacity. In its role as public employer, the UF Board of Trustees "negotiate[d] a [contractual] grievance procedure" with "a final and binding disposition by an impartial neutral" as its "terminal step," Fla. Stat. § 447.401, which the Arbitration Ban subsequently purported to nullify with respect to UFF-UF and its members, *see* Fla. Stat. § 1001.741(2).

24.     Defendant Rahul Patel serves as Vice Chair of the UF Board of Trustees. He is sued in his official capacity.

25.     Defendants David L. Brandon, John Brinkman, Richard P. Cole, Christopher T. Corr, James W. Heavener, Sarah D. Lynne, Daniel T. O'Keefe, Marsha D. Powers, Fred S. Ridley, Patrick O. Zalupski, and Anita G. Zucker serve as members of the UF Board of Trustees. They are sued in their official capacity.

## <u>FACTUAL ALLEGATIONS</u>

**I.** **Florida Has Banned Arbitration of Personnel Matters for Public University Faculty**

26.     With the enactment of SB 266 in 2023, codified at Florida Statutes Section 1001.741(2), Florida explicitly banned the arbitration of disputes relating to personnel actions or decisions for public university faculty. The law provides:

> Notwithstanding s. 447.401 or any other law related to faculty grievance procedures, personnel actions or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or designee. Such actions or decisions must have as their terminal step a final agency disposition … and are not subject to arbitration.

Fla. Stat. § 1001.741(2).

27.     State agencies, including the Florida Board of Governors, have issued binding regulations confirming that the Arbitration Ban prohibits both the enforcement of arbitration provisions in public university CBAs and negotiating future contracts containing arbitration provisions. For example, in the wake of the Arbitration Ban's enactment, the Florida Board of Governors promulgated Regulation 10.003, which affirms that final decisions related to Post Tenure Review ("<u>PTR</u>")—one category of personnel decisions—must not be subject to arbitration because, under the Arbitration Ban, "faculty grievance procedures, personnel actions, or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or

15

designee." Fla. Bd. of Governors Reg. 10.003. The regulation also provides that "universities shall not enter into any collective bargaining agreement that conflicts this regulation." *Id.*

28.    Thus, the intended effect of the Arbitration Ban is to nullify existing obligations to arbitrate disputes under operative collective bargaining agreements and to prohibit future collective bargaining over agreements to arbitrate disputes.

## II.    The Arbitration Ban Has Directly Harmed the Plaintiff Unions and Threatened the Employment Rights and Academic Freedom of Their Members

### A.    Plaintiffs' Current Contracts Include a Right to Arbitration

29.    Both UFF-FSU and UFF-UF, with the support of UFF, negotiated CBAs with their respective Board of Trustees, copies of which are attached to this Complaint as Exhibit 1 ("FSU CBA") and Exhibit 2 ("UF CBA"). Both CBAs establish the rights and obligations among and between the unions, their members, the universities, and the universities' boards of trustees. Their provisions govern matters such as hiring, promotions, work assignments, salaries, tenure, academic freedom, discipline, demotions, and termination.

30.    Both CBAs contain identical provisions entitling faculty members to a three-step process to bring a grievance, defined as "a dispute concerning the interpretation or application of a specific term or provision of [the CBA]." Ex. 1, arts. 20.3; 20.8(d)–(f); Ex. 2, arts. 28.2; 28.7–28.9. An employee or a group of employees

can bring a grievance over any provision that confers rights upon employees, Ex. 1, art. 20.3; Ex. 2, art. 28.2, which includes provisions relating to personnel actions or decisions regarding faculty, including in the areas of evaluations, promotion, tenure, discipline, or termination, *see, e.g.*, Ex. 1, arts. 6.5, 16.6; Ex. 2, arts. 14.5(d), 27.1(d)(2).

31.    Plaintiffs' CBAs each expressly state: "If the grievance has not been satisfactorily resolved …, [the union] may … proceed to arbitration by filing a written notice of the intent to do so." Ex. 1, art. 20.8(f)(1); Ex. 2, art. 28.9(a). This is the final stage of the grievance process.

32.    The CBAs also contain detailed procedures regarding the timing, venue, scope, procedure, and costs of arbitration, including the requirement of a neutral arbitrator. *See* Ex. 1, art. 20.8; Ex. 2, art. 28.

33.    The CBAs indicate that the three-step grievance procedure culminating in arbitration is the "sole and exclusive method for resolving the grievances of faculty members." Ex. 1, art. 20.1; Ex. 2, art. 28.1(a). Plaintiffs would not have agreed to such a contractual term if the right to arbitration was not included in the grievance procedure.

34.    These arbitration provisions are essential to protecting the employment rights and academic freedom of Florida public university faculty. The right to bring grievances to a neutral third party ensures the fairness and integrity of Defendants'

decision-making. Without arbitration, Plaintiffs and their members have no meaningful recourse for violations of their contracts or for unjustified attacks on their employment rights, including attacks on their jobs, working conditions and academic freedom.

35.   The FSU CBA is effective through June 30, 2025. Ex. 1, art. 29.1.

36.   The UF CBA expired June 30, 2024, but it remains the governing CBA until a new contract is ratified. Ex. 2, art. 33.1.

**B.    The Arbitration Ban's Purported Invalidation of Plaintiffs' Existing Contractual Right to Arbitration Threatens the Integrity of Plaintiffs' CBAs and the Enforceability of All of Plaintiffs' Members' Employment Rights**

37.   The Arbitration Ban has injured Plaintiffs and their members by injecting uncertainty into the previously well-defined grievance procedures laid out in the CBA, which provide the mechanism for resolution of not just personnel matters but all employment rights and contract-related disputes.

38.   Plaintiffs have been compelled to re-negotiate operative CBAs during their currently existing contractual term specifically to address the Arbitration Ban's effect on the CBAs' grievance process and its threat to the contractual rights of Plaintiffs and their members.

39.   On July 18, 2023, Patrick Keegan, Assistant Provost and Chief Negotiator for UF, notified Plaintiff UFF-UF that due to "several impactful pieces of legislation from the previous session," UF was unilaterally proposing contract revisions

that reflected an "attempt to strike … those provisions which must be eliminated from our contract, including those dealing with … binding arbitration."

40.    The proposed revisions sent by Keegan deleted all references to arbitration from the CBA, including the entirety of articles 28.9 and 28.10. The proposal included no alternative conflict resolution procedures, meaning that "Step 2" of the grievance procedure, which involves the University Provost reviewing the grievance and issuing a "written decision, stating the reasons for the decision," Ex. 2, art. 28.8, would be final and not subject to any review by a neutral third party.

41.    After UFF-UF rejected this proposal, on August 15, 2023, Keegan renewed UF's "request to meet to bargain the impact" of the laws on "the use of arbitration." Keegan stated further that if UFF-UF "refuse[d] to schedule an opportunity to bargain the impact of this legislation … the University will consider such refusal a waiver of Collective Bargaining … and the University will proceed in striking the language unilaterally as proposed[.]"

42.    Given the threat of unilateral imposition of a contract with no recourse to challenge adverse personnel decisions to any authority besides the University itself, on August 24, 2023, UFF-UF agreed "under protest, to discuss a schedule for bargaining" regarding the arbitration provisions, despite the ongoing validity of the previously negotiated CBA.

43.   Since then, UFF-UF and UF have met numerous times and have exchanged numerous proposals. During those exchanges, based solely on the Arbitration Ban, UF has refused to consider any proposal involving arbitration of personnel decisions. To date, UFF-UF and UF have been unable to reach an agreement, resulting in substantial uncertainty about whether and how any contractual disputes will be resolved and depriving Plaintiffs' members of any meaningful protection from the denial of contractual rights.

44.   The UF CBA expired June 30, 2024. UFF-UF intends to once again bargain for its members' right to arbitrate personnel decisions, but Florida's Arbitration Ban prevents that bargaining from occurring.

45.   Meanwhile, UFF-FSU, aware of these events at UF and similar developments other Florida public universities, recognized that the Arbitration Ban would likely be interpreted by FSU as nullifying its members' contractual right to arbitration and effectively rendering any decision of the University President final and unappealable. As a result, in April 2024, UFF-FSU began negotiations with FSU to try to establish an alternative set of dispute resolution procedures that would protect the integrity of its CBA and ensure a meaningful dispute resolution process.

46.   Since then, because of the Arbitration Ban, UFF-FSU and FSU have met numerous times and have exchanged at least 11 proposals for an alternative dispute resolution procedure. During those exchanges, based solely on the Arbitration

Ban, FSU has refused to consider any proposal involving arbitration of personnel decisions. To date, UFF-FSU and FSU have been unable to reach an agreement, resulting in substantial uncertainty about whether and how any contractual disputes will be resolved and depriving Plaintiffs' members of any meaningful protection from the denial of contractual rights.

47.     The Arbitration Ban has caused Plaintiffs material and cognizable harm by forcing them to begin expensive and time-consuming negotiations with Defendants to bring clarity and stability to the contractual grievance process. UFF personnel have spent at least 795 hours supporting Universities around the state in responding to the Arbitration Ban, including advising Universities regarding negotiation of alternatives to the arbitration provisions in their CBAs. UFF-UF personnel have spent at least 216 hours towards negotiating with UF regarding a replacement for the arbitration provision in the UF CBA. UFF-FSU personnel have spent at least 84 hours towards negotiating with FSU regarding a replacement for the arbitration provisions in the FSU CBA. These numbers represent the minimum amount of time, energy, bargaining power and resource use that Plaintiffs were forced to expend because of the Arbitration Ban.

48.     Plaintiffs remain uncertain as to what procedures may result from these negotiations and whether they will provide any protection for their and their members' contractual rights whatsoever.

49.     As a result, Plaintiffs have lost and continue to lose members, including as those members elect to seek employment in other states and at other universities due to the loss of and uncertainty about their employment rights.

**C.     Defendants Have Denied Faculty Their Right to Arbitration Based on the Arbitration Ban, Threatening Academic Freedom and Fundamental Employment Rights**

50.     The Arbitration Ban is depriving Plaintiffs and their members of their bargained-for benefit of resolving employment-related disputes in front of a neutral arbitrator.

51.     Both FSU and UF have stated their intent to refuse to arbitrate faculty grievances regarding personnel matters, relying on the Arbitration Ban.

52.     For example, a tenured professor at UF was terminated on or about February 29, 2024, while on a medical leave of absence. The termination decision relied in large part on flawed evaluations that had already been challenged in a separate grievance process. On March 14, 2024, the professor and his union, Plaintiff UFF-UF, filed a grievance regarding his termination. On March 26, 2024, Ryan Fuller, Deputy General Counsel and Executive Vice President at UF, rejected the grievance, stating that "[p]ursuant to Fla. Stat. § 1001.741(2) [the Arbitration Ban], the Notice of Termination is not subject to arbitration and, therefore, constitutes the final unappealable action of the University."

53.     On May 29, 2024, in response to an inquiry from UFF-UF, Fuller made clear that "UF continues to maintain its March 26 position concerning [the professor's] dismissal grievance."

54.     In addition, in connection with the PTR process imposed by SB 266 and the Florida Board of Governors' Regulation 10.003, as of July 2, 2024, at least four tenured faculty members at UF had received letters of proposed termination. In response to an inquiry from UFF-UF, Fuller confirmed on July 3, 2024 that "[t]he University's position is that terminations resulting from PTR … are not arbitrable pursuant to Fla. Stat. 1001.741(2)," the Arbitration Ban.

55.     On July 3, 2024, Fuller also stated that "a 'does not meet expectations' PTR rating … is also not arbitrable under the same Florida statute." There are currently approximately twenty faculty members at UF, represented by UFF-UF, who have received a "does not meet expectations" PTR rating and are thus at risk of termination. Because of the Arbitration Ban, each one is unable to access neutral review by an arbitrator, as required by the UF CBA.

56.     Similar stories are playing out across the Florida public university system because of the Arbitration Ban. For example, in December 2023, another local chapter of Plaintiff UFF filed a notice of arbitration on behalf of a professor at a Florida public university arising out of a grievance alleging that his annual evaluation had been conducted in violation of his CBA, which contains substantively

identical arbitration provisions to those contained in Plaintiffs' CBAs. That university's Associate General Counsel replied to the Notice of Arbitration by quoting the text of the Arbitration Ban and asserting that "[a]ccordingly, the Notice of Arbitration filing is invalid."

57.     As a result of the Arbitration Ban, Plaintiffs' members, including these individuals, are being denied the benefit of the arbitration provisions in their CBAs, including their right to have a neutral third-party evaluate the fairness and integrity of the decisions to terminate them or take other adverse actions threatening their livelihoods, their reputations, and their academic freedom.

58.     The Arbitration Ban thus threatens the academic freedom of faculty across Florida's public university system. It promotes self-censorship and impairs faculty members' ability to publish and express their ideas because they have no protection from arbitrary, malicious or retaliatory adverse actions that could cause them to lose their livelihoods and academic standing without the possibility of review by a neutral arbitrator to ensure compliance with employment protections guaranteed by their CBAs.

59.     No adequate remedy at law exists for these losses of the right to arbitrate adverse personnel decisions before a neutral arbitrator because Defendants would raise the Arbitration Ban as an absolute defense.

## III.   The FAA Preempts Florida's Arbitration Ban

60.    Pursuant to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, federal law preempts state law when the laws conflict, including when the state law stands as an obstacle to the objective or purpose of the federal law.

61.    The FAA states that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

62.    Section 2 thus directs that "courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted). That provision requires enforcement of arbitration agreements unless they are the product of fraud or unconscionability, or otherwise unenforceable as a matter of generally applicable contract law.

63.    To determine whether a state law conflicts with a federal law, courts look to Congress's purpose in passing the federal law, and the purpose of the FAA is well established. It is "beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 131 U.S. at 345.

64.     The FAA unequivocally preempts any state statute that "prohibits out-right the arbitration of a particular type of claim," *Concepcion*, 563 U.S. at 341, "discriminat[es] on its face against arbitration[, or] covertly accomplishes the same objective," *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017).

65.     The FAA also "preempts state law to the extent it treats arbitration agreements differently than other contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).

66.     The FAA applies to Plaintiffs' CBAs because the CBAs are contracts "involving commerce." *See Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 273 (1995). The economic activity of the Universities substantially impacts interstate commerce. For example, each of the Universities solicits and accepts federal funding, including through student financial aid and research funding, purchases supplies from out of state, is subject to federal regulation, and recruits students and faculty from around the country.

67.     Florida's Arbitration Ban directly conflicts with the FAA because it stands as an obstacle to the objective and purpose of the FAA to promote arbitration, purports to invalidate written provisions in existing CBAs evidencing a transaction involving commerce to settle by arbitration controversies thereafter arising thereunder, prohibits arbitration of particular types of claims, treats arbitration agreements differently than other contracts, and discriminates against arbitration. Therefore, the

Arbitration Ban is preempted and invalid, both facially and as applied to the Plaintiffs.

## COUNT I (All Plaintiffs)

**Federal Arbitration Act Preemption**
**42 U.S.C. § 1983**

68.     Plaintiffs incorporate paragraphs 1–67 as if fully set forth herein.

69.     The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

70.     The FAA guarantees that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

71.     Any state law that "conflicts with § 2 of the Federal Arbitration Act … violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

72.     The CBAs reflect, in a written provision, the parties' intention that adverse personnel decisions arising under the CBAs be arbitrated before a neutral

arbitrator. *See, e.g.*, Ex. 1, art. 20.8(d)–(f) (providing for such an arbitration procedure); Ex. 2, art. 28.7–28.9 (same).

73.    Because of the Arbitration Ban, Defendants are unable to, and have therefore refused to, negotiate contracts including arbitration provisions and have refused to enforce existing contractual provisions providing for arbitration.

74.    The Defendants are charged with enforcing, and have enforced, the Arbitration Ban.

75.    The Arbitration Ban directly conflicts with the FAA because the Arbitration Ban purports to invalidate terms providing for arbitration of adverse personnel decisions for higher education faculty in Florida and stands as an obstacle to Congress's objectives and purpose of promoting arbitration and enforcing arbitration agreements as written. It is therefore preempted.

76.    Under 42 U.S.C. § 1983, this Court has the power to enforce the rights of Plaintiffs' and their members under the FAA and enter appropriate injunctive relief.

## COUNT II (All Plaintiffs)

### Equitable Relief

77.    Plaintiffs incorporate paragraphs 1–67 and paragraphs 69–75 as if fully set forth herein.

78.     For the reasons discussed above, the Arbitration Ban is preempted by the FAA and its enforcement deprives Plaintiffs and their members of enforceable rights secured by that federal law.

79.     Federal courts of equity have the power to enjoin unlawful actions by state officials. Such equitable relief has traditionally been available in the federal courts to enforce federal law.

80.     This Court can and should exercise its equitable power to enter appropriate injunctive relief.

## COUNT III (All Plaintiffs)

### Declaratory Relief

81.     Plaintiffs incorporate paragraphs 1–67 and paragraphs 69–75 as if fully set forth herein.

82.     For the reasons discussed above, the Arbitration Ban is preempted by the FAA and its enforcement deprives Plaintiffs and their members of enforceable rights secured by that federal law.

83.     With exceptions not relevant here, in any "case of actual controversy within [their] jurisdiction," federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

84.    This Court can and should exercise its equitable power to enter a declaration stating that the FAA preempts the Arbitration Ban both on its face and as applied to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

*First*, a declaratory judgment that SB 266's Arbitration Ban, codified at Florida Statutes § 1001.741(2), is invalid with respect to all CBAs covered by the FAA, including but not limited to those to which Plaintiffs are a party;

*Second*, a permanent injunction enjoining Defendants from enforcing the Arbitration Ban in any manner, including but not limited to taking any action to impair Plaintiffs' and their members' existing contractual right to arbitrate grievances before a neutral arbitrator under the operative CBAs; enjoining Defendants from removing or seeking removal of arbitration provisions from operative CBAs based on the Arbitration Ban; and enjoining Defendants from enforcing the Arbitration Ban in future contract negotiations by refusing to negotiate about the availability of arbitration;

*Third*, an award of reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

*Fourth*, such other and further relief as the Court may find just and proper.

Dated:  New York, NY
        August 7, 2024

Respectfully submitted,

SELENDY GAY PLLC

By:   /s/        Faith E. Gay

Kimberly C. Menchion
(FBN 425613)
Florida Education Association
213 South Adams Street
Tallahassee, FL 32301
Tel: 850-224-7818
kimberly.menchion@floridaea.org

Daniel J. McNeil*
American Federation of Teachers
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel: 202-879-4400
dmcneil@aft.org

Faith E. Gay (FBN 129593)
Corey Stoughton*
Hannah R. Miles*
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
cstoughton@selendygay.com
hmiles@selendygay.com

Mark H. Richard (FBN 305979)
Phillips, Richard & Rind, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, FL 33173
Tel: 305-412-8322
mrichard@phillipsrichard.com

*(application for admission *pro hac vice* forthcoming)

*Attorneys for Plaintiffs*