**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

---

UNITED FACULTY OF FLORIDA, et al.

*Plaintiffs*,

v.

BRIAN LAMB, in his official capacity as
Chair of the Florida Board of Gover-
nors, et al.

*Defendants*.

Case No. 1:24-cv-000136-MW-MAF

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................2

    A.    UF and UFF ................................................................2

    B.    The BOG and BOT ........................................................4

    C.    The Arbitration Ban ......................................................6

    D.    The Arbitration Ban's Impact on Plaintiffs and Their Members .........8

LEGAL STANDARD ..........................................................................12

ARGUMENT ...................................................................................13

I.    The Federal Arbitration Act Preempts Florida's Arbitration Ban ................13

    A.    There Is a Conflict Between the FAA and the Arbitration Ban That Must Be Resolved in Favor of the FAA ....................................13

    B.    Plaintiffs' Facial Challenge Warrants Relief Invalidating the Arbitration Ban in All its Applications ................................19

II.    Plaintiffs Have Standing ..............................................................22

    A.    Plaintiffs Have Established an Associational Injury-In-Fact .............23

        1.    Members Have Standing to Sue in Their Own Right ...............24

        2.    The Interests Plaintiffs Seek to Protect Are Germane to Their Purpose ........................................................28

        3.    Neither the Claim Asserted nor the Relief Requested Requires Member Participation ................................29

    B.    Plaintiffs' Harm Is Directly Traceable to the BOG and UF-BOT, and the BOG and UF-BOT Can Redress This Harm ...........................31

CONCLUSION ................................................................................33

**Page(s)**

## Other Authorities

*Alachua Cnty. Educ. Ass'n v. Carpenter,*
  2024 WL 3548774 (N.D. Fla. July 24, 2024)......................................23

*Amerisure Ins. Co. v. Old Dominion Ins. Co.,*
  2018 WL 11413306 (N.D. Fla. Mar. 26, 2018)..................................12

*Arcia v. Fla. Sec'y of State,*
  772 F.3d 1335 (11th Cir. 2014) ............................................................24

*Arizona v. United States,*
  567 U.S. 387 (2012).............................................................................13

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)..................................................................... 14, 19

*Borrero v. United Healthcare of N.Y., Inc.,*
  610 F.3d 1296 (11th Cir. 2010) ..........................................................24

*Brayman Const. Corp. v. Home Ins. Co.,*
  319 F.3d 622 (3d Cir. 2003) ................................................................15

*Caley v. Gulfstream Aerospace Corp.,*
  428 F.3d 1359 (11th Cir. 2005) ........................................... 14, 18, 19

*Califano v. Yamasaki,*
  442 U.S. 682 (1979).............................................................................21

*Chamber of Commerce v. Bonta,*
  62 F.4th 473 (9th Cir. 2023) ...............................................................17

*Cir. City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001).............................................................................14

*City of Delray Beach v. Pro. Firefighters of Delray Beach, Loc. 1842, Int'l Ass'n of
  Firefighters,*
  636 So. 2d 157 (Fla. Dist. Ct. App. 1994)..........................................25

*City of Los Angeles, Calif. v. Patel*,
   576 U.S. 409 (2015) ........................................................................20

*Club Madonna, Inc. v. City of Miami Beach*,
   42 F.4th 1231 (11th Cir. 2022) ....................................................20

*Cruz v. Cingular Wireless, LLC*,
   648 F.3d 1205 (11th Cir. 2011) ...................................................19

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) ........................................................................19

*Estrada v. Becker*,
   917 F.3d 1298 (11th Cir. 2019) ...................................................14

*Ferguson v. Corinthian Colls.*,
   733 F.3d 928 (9th Cir. 2013) ........................................................15

*Fla. Beach Advert., LLC v. City of Treasure Island, Fla.*,
   511 F. Supp. 3d 1255 (M.D. Fla. 2021)....................................20

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1154 (11th Cir. 2008) ...................................................24

*Florida v. HHS*,
   19 F.4th 1271 (11th Cir. 2021) ....................................................21

*Georgia Ass'n of Latino Elected Offs. v. Gwinnett Cnty. Bd. of Registration & Elections*,
   36 F.4th 1100 (11th Cir. 2022) ....................................................22

*Gibbons v. Ogden*,
   22 U.S. 1 (1824)...............................................................................14

*Greater Birmingham Ministries v. Sec'y of State of Alabama*,
   992 F.3d 1299 (11th Cir. 2021) ............................................ 29, 30

*Health and Hosp. Corp. of Marion Cnty. v. Talevski*,
   599 U.S. 166 (2023)........................................................................22

*Hisp. Fed'n v. Byrd*,
   2024 WL 905470 (N.D. Fla. Feb. 27, 2024) ...........................13

*Hisp. Fed'n v. Byrd*,
    734 F. Supp. 3d 1263 (N.D. Fla. 2024) ...............................................33

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*,
    477 U.S. 274 (1986).............................................................................28

*Kindred Nursing Ctr. Ltd. v. Clark*,
    581 U.S. 246 (2017)..................................................................... 17, 18

*Landolfi v. City of Melbourne*,
    515 F. App'x 832 (11th Cir. 2013) ......................................................12

*Lujan v. Def.'s of Wildlife*,
    504 U.S. 555 (1992)...............................................................................23

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012)..................................................................... 14, 15

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)...............................................................................14

*Muransky v. Godiva Chocolatier*,
    979 F.3d 917 (11th Cir. 2020) ..............................................................23

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) ............................................................29

*Nat'l Rifle Ass'n of Am., Inc. v. Swearingen*,
    545 F. Supp. 3d 1247 (N.D. Fla. 2021) ...............................................20

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*,
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) ...............................................33

*Perry v. Thomas*,
    482 U.S. 483 (1987)...............................................................................15

*Saturn Distribution Corp. v. Williams*,
    905 F.2d 719 (4th Cir. 1990) ...............................................................17

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)..................................................................................15

*Starship 1 v. Sky Support*,
   2023 WL 5231807 (S.D. Fla. June 14, 2023)......................................................13

*United States v. Frandsen*,
   212 F.3d 1231 (11th Cir. 2000) ....................................................................20

*United States v. Pugh*,
   90 F.4th 1318 (11th Cir. 2024) ....................................................................30

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022)....................................................................................19

## <u>Constitutional and Statutory Provisions</u>

9 U.S.C. §2 ................................................................................ 15, 17, 23

42 U.S.C. §1983 .......................................................................... 22, 23

Fla. Const., art. IX, § 7(c) ...............................................................7

Fla. Const., art. IX, § 7(d) ...................................................... 5, 6, 34

Fla. Stat. §447.401 ................................................................... 8, 9, 17

Fla. Stat. §1001.71(1)....................................................................8

Fla. Stat. §1008.322 .....................................................................33

Fla. Stat. § 1001.741 ......................................................... passim

Fla. Stat. § 1001.705 ............................................................ 5, 6, 7, 34

Fla. Stat. § 1008.322 ............................................................ 6, 7, 34

U.S. Const. art. VI, cl. 2 .............................................................15

## <u>Rules</u>

Fed. R. Civ. P. 56(a)...................................................................13

## <u>Other Authorities</u>

SB 266, 28th Leg., 1st Reg.Sess. (Fla. 2023) ........................................8

# PRELIMINARY STATEMENT

This case asks the Court to answer a straightforward question of law: Does the Federal Arbitration Act (the "FAA") preempt Florida's statutory ban on arbitration of faculty grievances at state universities? The Court has already answered this question in the affirmative. In its Order denying in relevant part Defendants' motion to dismiss, the Court held that because Fla. Stat. § 1001.741(2) (the "Arbitration Ban") "states that 'personnel actions or decisions regarding faculty' are 'not subject to arbitration.' … Plaintiffs have sufficiently alleged that Fla. Stat. § 1001.741(2) conflicts with the FAA." Dkt. 39 at 36. This conclusion turns on the plain language of the relevant statutes, not on any factual issue, entitling Plaintiffs to summary judgment.

Because there is an irreconcilable conflict between Florida's Arbitration Ban and federal law, Plaintiffs—the United Faculty of Florida and its University of Florida chapter—are entitled to declaratory and injunctive relief enjoining the Arbitration Ban and any implementing regulations facially and as applied to Plaintiffs and their members across Florida. This dispute is ripe and Plaintiffs have standing because the Arbitration Ban has already prevented and will continue to prevent Plaintiffs and their members from arbitrating disputes under existing collective bargaining agreements ("CBAs") and bans Florida state universities from negotiating for arbitration in future CBAs. This Court should thus grant Plaintiffs (1) a declaration

stating that the Arbitration Ban and any regulations implementing the Arbitration Ban are preempted by the FAA and thus invalid and unenforceable, and (2) a permanent injunction vacating the Arbitration Ban and regulations enforcing the Arbitration Ban, and prohibiting Defendants from enforcing them in any manner.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    UF and UFF

1.      The University of Florida ("UF") is the Florida State University System's flagship public university. Like other Florida state universities, UF solicits and accepts federal funding and financial aid, purchases supplies from states other than Florida, and recruits students and faculty from around the country and the world. Dkt. 44-1, Resps. 12-16; Dkt. 44-2, Resps. 16-17.

2.      The United Faculty of Florida ("UFF") is a statewide union representing faculty, graduate employees, and academic professionals at all twelve Florida public universities. Dkt. 44-3 ¶6.

3.      The United Faculty of Florida—University of Florida ("UF Chapter") is the local chapter of UFF at UF. Its members are employed as faculty and professionals by UF. It represents the UFF bargaining unit at UF. *Id*. ¶7.

4.      All UF Chapter members are members of UFF. *Id.* ¶8.

5.     With the support of UFF, the UF Chapter has negotiated and executed collective bargaining agreements ("CBAs") governing the employment rights of UF Chapter members. Dkt. 44-4 ¶¶7, 10-13, 96; Ex. 3 ¶13.

6.     The most recent UF CBA ("UF CBA") expired on June 30, 2024. Ex. 5, art. 33.1; Dkt. 43 ¶36. Because no new CBA has been agreed to by the parties, it is still in effect. Dkt. 44-4 ¶95; Dkt. 43 ¶36.

7.     Like the UF Chapter, UFF chapters at other Florida public universities negotiate and execute CBAs with their respective boards of trustees. *Id.* ¶10; Dkt. 44-3 ¶13.

8.     Plaintiffs' core responsibility is to protect their members' rights, Dkt. 44-4 ¶¶6-8; Dkt. 44-3 ¶¶12-13, including the employment rights set out in CBAs, such as procedural protections from improper termination, Dk. 44-5, art. 27, and unfair evaluations, *id.*, art. 18; *see also* Dkt. 44-4 ¶7.

9.     Those rights are protected by the grievance procedures set out in each UFF chapter's CBA. Dkt. 44-4 ¶¶10-13; Dkt. 44-3 ¶¶14-15.

10.     With the support of UFF, the UF Chapter represents faculty members in grievance proceedings related to employment disputes brought under the UF CBA. Dkt. 44-4 ¶¶7, 11; Dkt. 44-3 ¶12.

11.     Article 28 of the UF CBA establishes a process for such grievances. Most categories of grievances begin at "Step 1," which is review by a dean or a

designee. Ex. 5, art. 28.1(a). If the grievance is not satisfactorily resolved, it may proceed to "Step 2," which is review by the provost or a designee. *Id*. Further appeal requires the union and the affected member to file a Notice of Arbitration, which triggers "Step 3" review, which is a final binding arbitration before a neutral arbitrator. *Id*. 28.9(a). All grievances concerning terminations proceed immediately to Step 3, which is the final stage of the grievance process under the UF CBA. *Id.* 28.6.

12. The grievance process under the UF CBA is regularly used to resolve faculty employment disputes and, prior to the Arbitration Ban, unresolved grievances proceeded to Step 3's arbitration process. Dkt. 44-4 ¶¶12, 15. Arbitration has been the primary mechanism to enforce Plaintiffs' member rights under the UF CBA, and the exclusive neutral point of review in the CBA's grievance process. *Id.* ¶¶14-21.

13. Prior to the Arbitration Ban, binding neutral arbitration was the final stage of the grievance process at all other state universities in Florida. Dkt. 44-3 ¶¶14-15.

## B.   The BOG and BOT

14. Article IX, Section 7(d) of the Florida Constitution establishes the Florida Board of Governors (the "<u>BOG</u>"), which is composed of seventeen members, all of whom are Defendants in this action in their official capacity. Fla. Const., art. IX, § 7(d).

15.     The BOG "operate[s], regulate[s], control[s], and [is] fully responsible for the management of the state university system." *See* Fla. Const., art. IX, § 7(d); *see also* Fla. Stat. § 1001.705(2).

16.     The BOG is charged with "[c]omplying with, and enforcing for institutions under the board's jurisdiction, all applicable local, state, and federal laws." Fla. Stat. § 1001.705(1)(b)(12). Thus, the BOG must "oversee the performance of state university boards of trustees in the enforcement of laws, rules, and regulations." Fla. Stat. § 1008.322(1).

17.     The BOG has delegated certain of its powers concerning the operation of state universities to boards of trustees. *See* Fla. Bd. Govs. Reg. ("BOG Reg.") 1.001(5)(a). However, it may not delegate its role as the ultimate authority responsible for ensuring that boards of trustees comply with state law in the exercise of their delegated powers. *See* Fla. Const. art. IX, § 7(d) (requiring the BOG remain "fully responsible for the management of the whole university system"); Fla. Stat. § 1001.705(1)(b) (requiring the BOG remain "fully responsible for the management of the whole publicly funded State University System").

18.     If a board of trustees fails to adhere to state law, the BOG has the power to investigate that non-compliance and it has investigated such non-compliance in the past. Dkt. 44-2, Resps. 25, 28-29.

19.     If a board of trustees fails to adhere to state law, the BOG also has the power and responsibility to impose sanctions, including by withholding funds budgeted to the university. Fla. Stat. § 1008.322(5)(a); Dkt. 44-2, Resps. 25, 30-31.

20.     The BOG enforces state laws directly by issuing regulations directing boards of trustees to implement acts of the Florida Legislature. Fla. Stat. § 1001.705(2); Dkt. 44-6, Resp. 1; Dkt. 44-7, Resp. 3.

21.     Like all other boards of trustees, the University of Florida Board of Trustees ("UF-BOT") was established pursuant to Article IX, Section 7(c) of the Florida Constitution. It governs and manages UF under the oversight and instruction of the BOG. *See* BOG Reg. 1.001.

22.     The UF-BOT is composed of thirteen members, all of whom are Defendants in their official capacity. *See* BOG Reg. 1.001(2)(a).

23.     The UF-BOT is vested with decision-making authority over the operations of UF. Fla. Stat. § 1001.71(1). It must enforce laws affecting UF, *id.*, and under BOG Regulations, it "is responsible for compliance with all applicable laws, rules, regulations, and requirements," BOG Reg. 1.001(8)(e).

**C.      The Arbitration Ban**

24.     Florida Senate Bill 266 was introduced in the Florida Legislature on March 7, 2023 and went into effect on July 1, 2023. SB 266, 28th Leg., 1st Reg. Sess. (Fla. 2023).

25.    The Arbitration Ban contained in SB 266 provides that:

> Notwithstanding s. 447.401 or any other law related to faculty grievance procedures, personnel actions or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or designee. Such actions or decisions must have as their terminal step a final agency disposition, … and are not subject to arbitration.

Fla. Stat. § 1001.741(2).

26.    On or about November 9, 2023, the BOG amended its Regulation 10.003 to implement SB 266, including the Arbitration Ban.

27.    Section 5(e) of that regulation was amended as follows:

> (e) Final decisions regarding post-tenure review may be appealed under university regulations or collective bargaining agreements, as applicable to the employee. consistent with the following: ~~The arbitrator shall review a decision solely for the purpose of determining whether it violates a university regulation or the applicable collective bargaining agreement and may not consider claims based on equity or substitute the arbitrator's judgment for that of the university~~.

> Notwithstanding section 447.401, Florida Statutes, or any other law related to faculty grievance procedures, personnel actions, or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or designee. Such actions or decisions must have as their terminal step a final agency disposition, which must be issued in writing to the faculty member, and are not subject to arbitration.

28.     BOG Reg. 10.003(7) further states that "universities shall not enter into any collective bargaining agreement that conflicts with this regulation."

29.     Boards of trustees, including the UF-BOT, and Florida state universities must comply with BOG Reg. 10.003(5)(e) and (7). Dkt. 44-2, Resps. 13, 32.

30.     The Arbitration Ban prevents grievances regarding faculty personnel decisions from being appealed to a neutral arbitrator. *Id.* Resp. 7. Instead, such grievances are resolved by the university president or her designee, and may not be further appealed. *Id.*

31.     BOG Reg. 10.003(5)(e) also prevents certain grievances regarding faculty personnel decisions from being appealed to a neutral arbitrator. *Id.* Resps. 11, 13. Instead, such grievances are resolved by the university president or her designee, and may not be further appealed. Fla. Stat. § 1001.741(2).

32.     The Arbitration Ban and BOG Reg. 10.003(7) also prevent universities from entering into CBAs providing for binding arbitration. Dkt. 44-2, Resps. 15, 22.

**D.     The Arbitration Ban's Impact on Plaintiffs and Their Members**

33.     Since the enactment of the Arbitration Ban in 2023, at least six of Plaintiffs' members at UF have attempted to grieve employment disputes—including disputes regarding annual evaluations, post-tenure reviews, performance improvement plans ("PIPs"), and terminations—and have been denied arbitration at Step 3 of the

grievance process.[1] Dkt. 44-4 ¶¶22-90. Several of these members are now facing the end of their careers without a meaningful chance to contest the reasons for their termination, despite many years of service to the UF community without negative performance reviews. *Id.* ¶¶24, 28, 33, 51, 53, 57, 58, 62, 71.

34.     In each case, UF explained that it was denying arbitration because of the Arbitration Ban. *See also* Dkt. 43 ¶3 (admitting that the UF Chapter "denied requests for arbitration due to the requirements of Section 1001.741(2)"), 51 (generally same). The specific facts of each denial are set forth in the Declaration of Meera Sitharam, the UF Chapter president. *See Id.* ¶¶22-90.

35.     For example, in two grievances brought by Dr. Oscar Crisalle, a UF Chapter and UFF member, UF denied arbitration explicitly because of the Arbitration Ban. *Id.* ¶¶35, 42. In the first—a grievance regarding a negative annual evaluation—an agent of the UF-BOT explained that "[p]ursuant to Fla. Stat. § 1001.741(2), Dr. Crisalle's 2022-2023 Annual Evaluation is not subject to arbitration and, therefore, constitutes the final non-arbitrable action of the University." Dkt. 44-8; Dkt. 44-4 ¶42.

36.     For Dr. Crisalle's second grievance—contesting his termination—an agent of the UF-BOT explained that "[p]ursuant to Fla. Stat. § 1001.741(2), the

---

[1] Additional UFF members have been denied arbitration at other Florida state universities. Dkt. 44-3 ¶16.

Notice of Termination is not subject to arbitration and, therefore, constitutes the final unappealable action of the University." Dkt. 44-9; Dkt. 44-4 ¶35.

37.     After UF terminated two professors, Dr. Markus Schneider and Dr. Anjay Shanker, due to negative post-tenure reviews, Plaintiffs filed grievances on their behalf. Ex. 4 ¶¶54, 59. UF refused to grieve or arbitrate either dispute, with an agent of the UF-BOT explaining that "[p]ursuant to Fla. Stat. § 1001.741(2), the Notice of Termination is not subject to arbitration and, therefore, constitutes the final unappealable action of the University." Dkts. 44-10, 44-12, 44-13; *see* Dkt. 44-4 ¶¶55, 60.

38.     UF denied two more professors, Dr. Kakali Bhattacharya and Dr. Zhihui Fang, the ability to arbitrate grievances regarding their negative post-tenure reviews. After completing Step 1 and Step 2 of the grievance process, and receiving negative decisions, both professors sought to have their grievances resolved by an arbitrator at Step 3. Dkt. 44-4 ¶¶73-76, 83-85. In response, an agent of the UF-BOT explained that "[p]ursuant to Fla. Stat. § 1001.741(2), personnel actions or decisions regarding faculty, including in the areas of evaluations, are not subject to arbitration and, therefore, the Step 2 decision constitutes the final unappealable action of the University. Accordingly, the University will not be arbitrating this matter." Dkts. 44-14, 44-15; 44-4 ¶¶77, 86.

39.     Drs. Crisalle, Schneider, Shanker, Battacharya, Fang, all remain members of UFF. Dkt. 44-3 ¶17. Though they are no longer employed by UF, Drs. Crisalle, Schneider, and Shanker's grievances are still pending and unresolved because they have not been arbitrated to their conclusion. *Id.* ¶¶19, 22, 25.

40.     None of the aforementioned grievances have been arbitrated. Dkt. 44-4 ¶¶47, 56, 61, 72, 78.

41.     Several other current members of UF Chapter and UFF, as well as several UFF members at other state universities in Florida, have or will soon have ripe grievances regarding employment disputes, including soon-to-be delivered negative post-tenure reviews and/or terminations, which they would like to arbitrate. *Id.* ¶¶91-93; Dkt. 44-3 ¶26.

42.     One member of the UF Chapter and UFF, Sheryl Kroen, who is a professor at UF, was placed on a PIP after a negative post-tenure review in July 2024 following years of positive annual reviews. Dkt. 44-16 ¶¶6, 13, 21. Knowing that she was likely to be terminated by UF, purportedly for failure to meet the terms of what she believed to be her PIP's unreasonable requirements, and knowing that she would have no recourse to challenge this adverse employment action, Dr. Kroen decided to retire early rather than participate in a futile grievance system. *Id.* ¶¶27-31. Absent the Arbitration Ban, Dr. Kroen would not have retired and instead would

have fought UF's efforts to push her out, including by grieving and then seeking arbitration of any termination. *Id*. ¶¶27-28, 31.

43.     To date, the UF Chapter and UF have not agreed to a new CBA. Dkt. 43 ¶43. Despite over a year of negotiations and offers of compromise, UF has refused to agree to include a provision guaranteeing arbitration for faculty employment disputes because of the Arbitration Ban, among other points of contention. Dkt. 43 ¶43, 73; Dkt. 44-4 ¶98. The UF Chapter is very unlikely to sign any CBA that does not contain a provision guaranteeing arbitration. *Id.* ¶99.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the case under the governing substantive law." *Amerisure Ins. Co. v. Old Dominion Ins. Co.*, 2018 WL 11413306, at *1 (N.D. Fla. Mar. 26, 2018). Summary judgment will be granted if the movant "support[s] its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne,* 515 F. App'x 832, 834 (11th Cir. 2013).

## <u>ARGUMENT</u>

## I.  The Federal Arbitration Act Preempts Florida's Arbitration Ban

In its decision denying in relevant part Defendants' motion to dismiss, this Court held that "Plaintiffs … sufficiently alleged section 1001.741(2) conflicts with the FAA," and had therefore stated a claim that the Arbitration Ban was preempted by the FAA. Dkt. 39 at 36. Because the existence of a conflict between the two statutes is a question of law that may be resolved based on their plain text, there is no material dispute of fact at the heart of this case. *See Hisp. Fed'n v. Byrd*, 2024 WL 905470, at *1 (N.D. Fla. Feb. 27, 2024) (Walker, J.) (finding that "whether Section 1981 preempts the Citizenship Requirement" is "a purely legal question" resolvable at summary judgment); *Starship 1 v. Sky Support*, 2023 WL 5231807, at *6 (S.D. Fla. June 14, 2023) (holding that "preemption is a legal question and does not require any factual support"). This Court should thus grant summary judgment to Plaintiffs, declare the Arbitration Ban and BOG Reg. 10.003(5)(e) and (7) void, and grant an injunction barring Defendants from enforcing them.

### A.  There Is a Conflict Between the FAA and the Arbitration Ban That Must Be Resolved in Favor of the FAA

The Supremacy Clause of the U.S. Constitution sets out the principle that federal law "shall be the supreme Law of the Land." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing U.S. Const. art. VI, cl. 2). The Supreme Court has interpreted this language to mean that "any state law that 'interfere[s] with, or [is] contrary to,'

federal law is preempted," and thus unenforceable. *Estrada v. Becker*, 917 F.3d 1298, 1302 (11th Cir. 2019) (citing *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)).

When determining whether a state law is preempted by federal law, "[t]he purpose of Congress [in enacting the federal statute] is the touchstone" of courts' analysis. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The FAA sets forth Congress's intent explicitly, stating that "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. §2. Interpreting this language, the Supreme Court has found it "beyond dispute that the FAA was designed to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution.").

As this Court explained, because the FAA sets out a policy favoring arbitration, "[w]hen a state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." Dkt. 39 at 35-36 (quoting *Concepcion*, 563 U.S. at 341 (2011)); *see also Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (stating that the FAA is "pre-emptive of state laws hostile to arbitration"); *Caley v. Gulfstream Aerospace Corp.*, 428

F.3d 1359, 1367 (11th Cir. 2005) ("The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts.").

To make this determination, courts use "standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives," *Ferguson v. Corinthian Colls.,* 733 F.3d 928, 936 (9th Cir. 2013); courts analyzing state laws barring arbitration have routinely held that such a law conflicts with and is preempted by the FAA. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (California law invalidating arbitration agreements in franchise agreements preempted by FAA); *Marmet Health Care*, 565 U.S. at 533 at (West Virginia law prohibiting arbitration provisions in nursing homes agreements preempted by FAA); *Perry v. Thomas*, 482 U.S. 483 (1987) (California law requiring judicial forum for wage disputes preempted by FAA); *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 627 (3d Cir. 2003) (Pennsylvania law requiring judicial forum for certain claims preempted by FAA).

The analysis here is straightforward. The Arbitration Ban provides that:

> Notwithstanding s. 447.401 or any other law related to faculty grievance procedures, personnel actions or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or designee. Such actions or decisions must have as their terminal step a final agency disposition, which must be issued in writing to the faculty member, and ***are not subject to arbitration***.

Fla. Stat. 1001.741(2) (emphasis added). The Ban directly conflicts with the FAA, 9 U.S.C. §2—which provides that agreements to arbitrate are "valid, irrevocable, and enforceable"—because, on its face, it invalidates and renders unenforceable CBA provisions requiring the arbitration of faculty personnel grievances at state universities and precludes the negotiation of future CBAs that include such arbitration provisions.[2]

This Court has already recognized that the Arbitration Ban would "conflict[] with the FAA," if it abrogates the portions of the "parties' CBA [that allegedly] provide for arbitration in certain circumstances." Dkt. 39 at 36. It is undisputed that the UF CBA provides for arbitration: the contractual language is plain. Dkt. 44-5, art. 28.9(a) ("If the grievance has not been satisfactorily resolved at Step 2, UFF may, upon the request of the grievant, proceed to arbitration"). Similar arbitration provisions are present across UFF's CBAs with other Florida universities. Dkt. 44-3 ¶14. There is no dispute that several of Plaintiffs' members have been denied arbitration

---

[2] It is beyond dispute that the FAA applies to every Florida university CBA. The FAA applies to "any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. §2. All of Florida's state universities, including UF, accept federal funding, including research grants and student financial aid money, purchase supplies from states other than Florida, and recruit students and faculty from states other than Florida. *See* Dkt. 44-1, Resps. 12-16; 44-2, Resps. 16-17; Dkt. 43 ¶66. This Court previously found that such facts, if proven, would be sufficient to "demonstrate Defendants are engaged in interstate commerce." Dkt. 39 at 35. Defendants admit these facts.

explicitly and solely because of the Arbitration Ban, Dkts. 44-4 ¶¶22-90; 44-16 ¶25; 44-3 ¶16, and Plaintiffs' members are likely to be denied arbitration in the future because of the Arbitration Ban, Dkts. 44-4 ¶¶91-101; 44-3 ¶¶26-27. This pattern has been repeated at state universities across Florida. Dkt. 44-3 ¶¶16, 26-27.

But the FAA does not only mandate enforcement of existing agreements to arbitrate, like the one contained in Plaintiffs' CBA; it also preempts state laws that, like the Arbitration Ban, prohibit parties from entering into *future* arbitration agreements. The Supreme Court has held that "[a state] rule selectively finding arbitration contracts invalid *because improperly formed* fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made." *Kindred Nursing Ctr. Ltd. v. Clark*, 581 U.S. 246, 254-55 (2017) (emphasis added). In other words, as appellate courts applying this Supreme Court rule have consistently held, the preemption effect of the FAA "extends to state rules that discriminate against the *formation* of arbitration agreements." *Chamber of Commerce v. Bonta*, 62 F.4th 473, 483-84 (9th Cir. 2023) (emphasis added); *see also Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 723 (4th Cir. 1990) ("The FAA does not allow a state legislature to circumvent Congressional intent by enacting special rules to discourage or prohibit the formation of agreements to arbitrate."). This makes sense: If the FAA permitted states to prevent parties from entering into an agreement to arbitrate, "[t]he FAA would then mean nothing at all—its provisions rendered helpless to prevent

even the most blatant discrimination against arbitration." *Kindred Nursing*, 581 U.S. at 255. Although the Eleventh Circuit has not yet issued a specific ruling on this point, no appellate court has held to the contrary and any such contrary opinion would be inconsistent with the Eleventh Circuit's broad embrace of the FAA's preemption principle. *See, e.g., Caley,* 428 F.3d at 1367-68.

There is no dispute that "[t]he Arbitration Ban prohibits the UF[-BOT] from bargaining for the contractual right to arbitrate Personnel Decisions regarding faculty." Dkt. 44-2, Resp. 15; *see* BOG Reg. 10.003(5), (7) (barring universities from arbitrating faculty employment disputes, and then stating that "universities shall not enter into any collective bargaining agreement that conflicts with this regulation"). Indeed, the UF Chapter has sought to bargain for binding arbitration of employment disputes in its next CBA, but the UF-BOT has refused due to the Arbitration Ban. Dkt. 44-4 ¶98. This dynamic has been repeated across Florida. Dkt. 44-3 ¶27; 44-17, art. 20.8(e)(3) (FSU CBA); 44-18, art. 20.8(f)(1) (NCF CBA).[3]

The conflict between the Arbitration Ban and the FAA is not subtle. Courts regularly strike down lesser burdens or conditional bans on arbitration as conflicting

---

[3] Even where a new CBA includes arbitration, such as where it is conditioned on the outcome of a lawsuit challenging the Arbitration Ban, *see, e.g.*, Dkt. 44-17, UFF and its chapters will not be able to arbitrate because the relevant boards of trustees are required to follow the Arbitration Ban, as enforced by the BOG. *See* Dkt. 44-6, Resp. 7. Such provisions underscore the prospective nature of the Ban's harm.

with the FAA. *See, e.g., Concepcion*, 563 U.S. at 352 (striking down state rule conditioning enforceability of certain arbitration agreements on availability of classwide arbitration procedures); *Caley*, 428 F.3d at 1374 n.16 (holding if state law "appl[ied] a different rule to arbitration agreements from contracts generally, that rule would be preempted by the FAA"); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996) (striking down Montana law conditioning enforceability of arbitration clause on special notice requirements); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 663 (2022) (striking down state law conditioning enforceability of arbitration agreement on specific joinder procedure); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215 (11th Cir. 2011) (striking down a construction of state law barring class action waivers in arbitration agreements). The same result is compelled here.

### B.     Plaintiffs' Facial Challenge Warrants Relief Invalidating the Arbitration Ban in All its Applications

This Court should grant Plaintiffs (1) a declaration that the Arbitration Ban and its implementing regulations are preempted by the FAA, and thus invalid and unenforceable in all their applications, and (2) a permanent injunction enjoining Defendants from enforcing the Ban and its implementing regulations in any manner including, but not limited to, enforcing them against Plaintiffs and their members.

This case presents a facial challenge to the Arbitration Ban and its implementing regulations as preempted by federal law.[4] Dkt. 1 ¶67; *see, e.g.*, *Club Madonna, Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) (striking down local ordinance as preempted by federal law). In a facial challenge, "as distinguished from an as-applied challenge," a plaintiff "seeks to invalidate a statute or regulation itself," as opposed to seeking to bar its enforcement under a particular set of circumstances. *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000); *see, e.g.*, *Fla. Beach Advert., LLC v. City of Treasure Island, Fla.*, 511 F. Supp. 3d 1255, 1270 (M.D. Fla. 2021) ("A preemption challenge is a facial attack on the constitutionality of a legal enactment."). The Arbitration Ban has only one discrete application: to ban arbitration of grievances relating to Florida public university faculty, in violation of the FAA. Its enforcement has uniform effects on the faculty deprived of arbitration and the unions denied the ability to negotiate for it.

Where a law is preempted, and thus unlawful "in all of its applications," a court may issue an injunction and declaratory relief invalidating that law on its face. *Nat'l Rifle Ass'n of Am., Inc. v. Swearingen*, 545 F. Supp. 3d 1247, 1270 n.31 (N.D. Fla. 2021) (Walker, J.) (citing *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 418

---

[4] Plaintiffs have also pled and proven facts sufficient for an as-applied challenge to the statute and its implementing regulations. Plaintiffs, therefore, preserve that claim in the alternative.

(2015)). Thus, the Court may properly issue the requested declaration and injunction striking down the Arbitration Ban and its implementing regulations and preventing their further application.

The scope of the relief Plaintiffs seek is appropriate for the additional reason that it is "necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Florida v. HHS*, 19 F.4th 1271, 1282 (11th Cir. 2021) (cleaned up) (noting that scope of relief is appropriate "where it is necessary to provide complete relief to the plaintiffs, to protect similarly situated nonparties, or to avoid the chaos and confusion of a patchwork of injunctions."). Plaintiff UFF is a statewide organization, with members at every Florida state university affected by the Arbitration Ban, and Defendant BOG is a statewide entity, which possesses enforcement authority over the Arbitration Ban and has used that authority to promulgate regulations implementing the Ban statewide. Thus, scope of the relief Plaintiffs seek here is appropriate.[5]

_____

[5] Plaintiffs' Complaint pleads their preemption claim under 42 U.S.C. § 1983 and in equity. This Court dismissed neither cause of action, construing them as "alternative theories," but concluded that Plaintiffs had only stated a claim based on the equity theory. Dkt. 39 at 16-29. The Court's decision on this point is sufficient to support summary judgment.

Nonetheless, while respectful of the Court's decision, Plaintiffs preserve and maintain their argument that the FAA does confer an individual right sufficient to support relief under Section 1983 because, among other reasons, it provides that arbitration

## II. Plaintiffs Have Standing

As this Court previously found, so long as their pleadings are supported by the record, Plaintiffs "have demonstrated associational standing" because at least one member of the UF Chapter and UFF has suffered an injury fairly traceable to Defendants' actions in enforcing the Arbitration Ban. Dkt. 39 at 11. Because facts sufficient to show traceable injury to at least one of Plaintiffs' members are undisputed, the Court should grant summary judgment in favor of Plaintiffs.[6]

---

provisions in contracts are "enforceable." 9 U.S.C. §2. This enforcement mechanism is not self-executing—the right to enforce the contractual provision is conferred on the individual contracting parties by the FAA. *See also id.* §4 (providing rights to enforce the FAA to "a party aggrieved"); *contra* Dkt. 39 at 19.

The structure of the FAA also does not demonstrate congressional intent to foreclose relief under Section 1983. Permitting Plaintiffs to enforce the "right that Congress validly and unambitiously create[d]"—to be permitted to agree to arbitration, and to have those agreements enforced—via Section 1983 is not "incompatible with the [FAA's] remedial scheme." *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 192 (2023). It is not enough that the FAA provides other enforcement mechanisms: "[I]n a world where the [FAA]'s remedial scheme could 'complement,' not 'supplant,' § 1983, [Defendants] must demonstrate more than that" to show congressional intent to foreclose a remedy under Section 1983. *Id.* at 190.

[6] Although not necessary to decide this motion, Plaintiffs maintain that they have direct standing because undisputed evidence shows that Plaintiffs have each suffered concrete injuries traceable to and redressable by Defendants. *See Georgia Ass'n of Latino Elected Offs. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022) (organization may establish standing "through its own injury in fact that satisfies the traceability and redressability elements").

Separate from the harm that Plaintiffs have suffered from the diversion of their limited resources to respond to Defendants' actions (examined by the Court, *see* Dkt. 39 at 7-11), Plaintiffs have suffered concrete organizational injuries because their

Article III standing requires a plaintiff to have (1) suffered an injury in fact, that is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete, particularized, and actual or imminent." *Muransky v. Godiva Chocolatier*, 979 F.3d 917, 925 (11th Cir. 2020). Plaintiffs meet each of these requirements.

## A. Plaintiffs Have Established an Associational Injury-In-Fact

Undisputed facts show that Plaintiffs have suffered an associational injury due to the Arbitration Ban and its implementing regulations, which have prevented, and will continue to prevent, Plaintiffs' members from arbitrating grievances and negotiating new CBAs that permit arbitration.

---

contractual rights have been impaired. Before the Arbitration Ban, UFF and the UF Chapter were entitled, by the UF CBA, to represent members in arbitrations. Dkt. 44-5, art. 28.9. Representing members in contesting personnel-related grievances— like terminations, suspensions or the implementation of a PIP—is among the most important functions of UFF and UF Chapter. Dkt. 44-4 ¶6-7; 44-3 ¶12. Plaintiffs thus possessed contractual rights under the CBA.

The Arbitration Ban stripped those contractual rights from Plaintiffs. This Court has previously recognized that such an injury to a union plaintiff is sufficient to establish standing. *See Alachua Cnty. Educ. Ass'n v. Carpenter*, 2024 WL 3548774, at *9 (N.D. Fla. July 24, 2024) ("Union Plaintiffs with CBAs … demonstrate[] an injury-in-fact" where the state law "nullifies an express term of their CBAs."). As the negotiators of CBAs, Plaintiffs are also directly injured by the Arbitration Ban's prohibition on future agreements to arbitrate. Dkt. 44-3 ¶13.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1035 (11th Cir. 2010). Plaintiffs easily meet each requirement for associational injury.

### 1.      Members Have Standing to Sue in Their Own Right

Plaintiffs' members have suffered sufficient harm to establish standing in their own right. A plaintiff organization need only show "that at least one member faces a realistic danger" of suffering harm. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1154, 1163 (11th Cir. 2008); *see, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014). Here, undisputed facts establish not only that members face imminent risk of harm, they have already suffered concrete harms, and will continue to do so in the future.

This Court previously found that the allegations in the Complaint regarding Plaintiffs' members, if proven, were sufficient to establish standing. Dkt. 39 at 12-13. On summary judgment, there is undisputed evidence showing that at least six of

Plaintiffs' members have *already* been denied arbitration of their grievances, and additional members face concrete risk of harm.[7]

*First*, undisputed evidence shows that Plaintiffs' members have been denied the right to arbitrate their grievances under the UF CBA, which is currently in effect and provides Plaintiffs' members, as well as Plaintiffs themselves, the right to arbitration.[8] *See* Dkt. 39 at 11; Ex. 5 art. 28.9.

Defendants have already enforced the Arbitration Ban against Plaintiffs' members by denying them arbitration. It is undisputed that six UF professors suffered an adverse employment action, attempted to grieve their dispute, and were denied arbitration *explicitly* because of the Arbitration Ban. Ex. 4 ¶22-90; Ex. 3 ¶17; *see also* Dkt. 43 ¶3, 51. For example, on February 29, 2024, Oscar Crisalle, a tenured professor at UF and a member of UFF and the UF Chapter, was terminated purportedly due to negative annual evaluations. Dr. Crisalle, through his representatives at UFF and UF Chapter, filed a grievance regarding the termination. Ex. 4 ¶34; Ex. 9. On March 26, 2024, Ryan Fuller, UF's Deputy General Counsel, refused to process

---

[7] Because the UF Chapter members are also members of the state-wide organization UFF, UFF also has associational standing. Dkt. 44-3 ¶9; *see* Dkt. 39 at 13.

[8] The UF CBA expired on June 30, 2024. *See* Dkt. 44-5, art. 33.1; Dkt. 43 ¶36. Under Florida law, however, a CBA continues to govern the parties' relationships until a new CBA replaces it. *City of Delray Beach v. Pro. Firefighters of Delray Beach, Loc. 1842, Int'l Ass'n of Firefighters*, 636 So. 2d 157, 159 n. 3 (Fla. Dist. Ct. App. 1994); Dkt. 43 ¶36. The parties have not agreed to a new CBA. Dkt. 44-4 ¶95.

the grievance and rejected arbitration, quoting the termination notice which stated: "Pursuant to Fla. Stat. § 1001.741(2), the Notice of Termination is not subject to arbitration and, therefore, constitutes the final unappealable action of the University." Ex. 4 ¶35; Ex. 9. Dr. Crisalle's harm is ongoing, because he intends to arbitrate these still-pending grievances if the Arbitration Ban is lifted.[9] Ex. 3 ¶19.

Similarly, Sheryl Kroen, a UFF and UF Chapter member and professor at UF, has felt forced into early retirement by the Arbitration Ban, despite consistently receiving positive evaluations prior to 2024. Ex. 4 ¶71; Ex. 16 ¶6, 31. Dr. Kroen challenged her negative post-tenure review and placement on a PIP by filing grievances with the assistance of Plaintiffs, but each grievance was denied by UF, the entity that initially issued the challenged decisions. Exs. 19-21; *see* Ex. 4 ¶¶66–67; Ex. 16 ¶¶11–20, 22–26. On December 12, 2024, Plaintiffs issued arbitration notices regarding these denials, Exs. 22-27; *see* Ex. 4 ¶66; Ex. 16 ¶24, but on December 19, 2024, UF responded stating: "Pursuant to Fla. Stat. § 1001.741(2), personnel actions or decisions regarding faculty, including in the areas of evaluations, are not subject to arbitration and, therefore, the Step 2 decision constitutes the final unappealable action of the University. Accordingly, the University will not be arbitrating this matter." Exs. 22-24; *see* Ex. 4 ¶67; Ex. 16 ¶25.

_____

[9] Grievances filed by UFF and UF Chapter members Drs. Schneider and Shanker are similarly still pending, and their harm is ongoing. Dkt. 44-3 ¶¶22-25.

Because Dr. Kroen was denied arbitration by UF, she was subject to a PIP, which she believed would have inevitably ended in her termination by UF. Ex. 16 ¶11-21; Dkt. 43 ¶55 (admitting that failure to meet the requirements of a PIP can subject faculty to termination). Absent the Ban, Dr. Kroen would have fought her termination by filing a grievance and seeking arbitration because she alleges there were multiple improprieties with her evaluations; however, without this option, Dr. Kroen decided to retire early because she no longer has access to neutral review and believes a grievance would be pointless. Ex. 16 ¶31.

*Second*, undisputed evidence shows that Plaintiffs' members will continue to suffer harm through denial of arbitration under the current CBA unless and until this Court enjoins Defendants' enforcement of the Arbitration Ban and its regulations.

In addition to the faculty listed above, several current UF Chapter members and UFF members at other Florida state universities have or will soon have ripe grievances regarding employment disputes. Ex. 4 ¶91; Ex. 3 ¶26. When these individuals file grievances, at least some will be denied and will file notices of arbitration, as is their right under their CBAs. Ex. 4 ¶¶91-93; Ex. 3 ¶26; Ex. 5, art. 28. At UF, for grievances that skip Steps 1 and 2, such as termination grievances, grievants will immediately file their notice of arbitration. *See* Ex. 5, art. 28.9.

Absent relief, each of the UFF and UF Chapter members who file a notice of arbitration regarding a grievance in the future will be denied arbitration due to the

Arbitration Ban and its regulations. Ex. 4 ¶¶91–94; Ex. 3 ¶26. Thus, Plaintiffs' members continue to suffer harm.

*Third*, additional members will suffer harm in the future because they will not be able to access arbitration if UF-BOT and the UF Chapter are barred from negotiating for an arbitration provision in future CBAs. For over a year, Plaintiffs have attempted to bargain to secure a new CBA but have been unable to come to an agreement, in part because of the Arbitration Ban. Ex. 4 ¶¶95–101; Dkt. 43 ¶36, 73 (admitting that "[b]ecause of the Arbitration Ban, [UF-BOT is] unable to, and ha[s] therefore refused to, negotiate contracts including arbitration provisions"). Plaintiffs intend to continue bargaining and, if not for the Arbitration Ban, would have the freedom to contract for arbitration. The Florida State University and New College of Florida UFF Chapters have even successfully bargained for a conditional right to arbitration in their CBAs that is triggered upon a finding that the Arbitration Ban is unconstitutional, Ex. 17, art. 20.8(e)(6); Ex. 18, art. 20.8(f)(1), showing that at least some boards of trustees would be amenable to including arbitration in future CBAs, absent the Arbitration Ban.

### 2. The Interests Plaintiffs Seek to Protect Are Germane to Their Purpose

The interests that UFF and the UF Chapter seek to protect through this suit are germane to their purposes and goals. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 286 (1986) (finding

second prong satisfied based on language in plaintiff union's constitution and recognizing "the interest of organized labor in obtaining benefits for its workers"); *Greater Birmingham Ministries v. Sec'y of State of Alabama,* 992 F.3d 1299, 1316 (11th Cir. 2021) (finding second prong satisfied because "both organizations['] purposes focus on voter rights and equal opportunity for minority voters").

Plaintiffs' purpose in bringing this suit is to protect the employment rights of their members, including the right to arbitrate adverse employment actions. Maintaining the ability to represent members in challenges to unlawful employment decisions, and protecting members' right to arbitrate disputes, is central to the goals of both UFF and the UF Chapter as laid out in their respective Constitutions. *See* Ex. 28, art. II, §§2, 4; Ex. 29, art. II, §§2, 4. Without a neutral arbitrator to determine the merits of a grievance, all the other employment protections that Plaintiffs have bargained for on behalf of their members—such as protections from arbitrary terminations and unfair evaluations (Ex. 5, arts. 18, 27)—are rendered toothless.

### 3. Neither the Claim Asserted nor the Relief Requested Requires Member Participation

Neither the claim asserted, nor the relief requested, requires the participation of individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1244 (11th Cir. 2003) (prong satisfied because relief requested would not require "affiants be made parties to this suit").

The only relevant facts involving individual members relate to the narrow issue of whether at least one member suffered sufficient harm to establish standing. These facts are undisputed and established either by correspondence between the parties or declarations. The question at the center of this dispute—whether the Arbitration Ban and its regulations are preempted by the FAA—is a pure legal issue which this Court can decide without the participation of any individual member. Indeed, the Eleventh Circuit has recognized that "the underlying facts of the case are largely irrelevant in a facial challenge," like this. *United States v. Pugh*, 90 F.4th 1318, 1325 (11th Cir. 2024).

Further, associational standing is proper because Plaintiffs seek systemic prospective relief that benefits all members through statewide protection of their arbitration rights. *See Greater Birmingham Ministries*, 992 F.3d at 1316 n.29 (finding a request for "prospective relief weighed in favor of finding that associational standing exists," and that when a plaintiff seeks "a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").

Therefore, Plaintiffs have met each of the three requirements to establish an associational injury-in-fact.

## B. Plaintiffs' Harm Is Directly Traceable to the BOG and UF-BOT, and the BOG and UF-BOT Can Redress This Harm

This Court has already determined that Plaintiffs' harm is directly traceable to and redressable by the BOG and UF-BOT. *See* Dkt. 39 at 13-16 (acknowledging Defendants did not contest traceability to and redressability by UF-BOT, and stating "[t]his Court is satisfied that the Board of Governor's promulgation of Regulation 10.003, which explicitly incorporates section 1001.741(2) and mandates that universities shall comply, creates a sufficient thread of traceability and redressability to connect it to Plaintiffs UF-UFF and UFF"). Nevertheless, Plaintiffs provide additional factual bases for such findings below.

*First*, undisputed facts establish that the UF-BOT traceably caused Plaintiffs' injuries through its joint enforcement of the Ban with the BOG. UF-BOT's agents explicitly denied arbitration to Plaintiffs and their members several times because of the Arbitration Ban, *see* Ex. 4 ¶¶35, 42, 55, 60, 67, 77, 86, and will continue to do so in the future, *see id.* ¶¶91–101. This is why Defendants did not contest traceability to the UF-BOT in their Motion to Dismiss.

*Second*, uncontested facts show that the BOG also caused Plaintiffs' injuries. As this Court has recognized, "Board of Governors Reg. 10.003, … incorporates the text of section 1001.741(2) and, importantly, states that 'universities shall not enter into any collective bargaining agreement that conflicts with this regulation.'" Dkt. 39 at 15. Defendants admit that this regulation acted as enforcement of the Ban. The

UF-BOT outright "admit[ted] that the Board of Governors has Instructed the UF Board of Trustees to comply with the Arbitration Ban … to the extent that the Board of Governors included the language of Fla. Stat. § 1001.741(2) in Board of Governors Regulation 10.003(5)(e)." Ex. 6, Resp. 7. Similarly, the BOG has admitted that the Regulation "states that 'final decisions regarding post-tenure review may be appealed … consistent with Fla. Stat. § 1001.741," Ex. 2, Resp. 24, and that the UF-BOT "has a statutory responsibility pursuant to Fla. Stat. § 1008.322 to comply with laws and Board of Governors regulations," including this Regulation, *id.* Resp. 11.

Further, if the UF-BOT refused to comply with Regulation 10.003, either by allowing arbitration or entering into a CBA with arbitration provisions, the BOG has the authority to compel the UF-BOT to comply, including through a variety of coercive mechanisms like withholding funding, declaring UF ineligible for grants, or vetoing its annual budget. *See* Dkt. 39 at 15 (citing Fla. Stat. § 1008.322(5)(a) (withholding funding appropriated to the BOG for state universities), Fla. Stat. § 1008.322(5)(b) (declaring "the state university ineligible for competitive grants disbursed by the Board of Governors"); BOG Reg. 9.007 (allowing BOG to veto annual board of trustee budgets)). The BOG has admitted that it has the authority to enforce state law, including the Arbitration Ban, through Fla. Stat. § 1008.322(5). *See* Ex. 2, Resp. 29.

*Third*, the concrete enforcement powers described above establish redressability as to both Defendants, as already explained by this Court. *See* Dkt. 39 at 15–16 (citing *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1261–62 (N.D. Fla. 2022) (the BOG "makes the determination that could lead to withholding performance funding, which in turn leaves the universities little choice but to" follow state statute)). Indeed, an injunction reaching the BOG is necessary to redress Plaintiffs' injuries. If only the UF-BOT is enjoined, the BOG will be under an independent legal mandate to enforce the Arbitration Ban by ordering the UF-BOT to follow state law and its regulations, exercising its power to cut UF's budget to force compliance, and promulgating and enforcing regulations to enforce state law directly. *See* Fla. Const. art. IX, § 7(d); Fla. Stat. § 1001.705(2). Such a scenario would fail to provide Plaintiffs complete relief. Moreover, the mere existence of BOG Reg. 10.003(5)(e) and (7) establish that the BOG is the state agency with enforcement authority regarding the Arbitration Ban, and thus a proper defendant. *See Hisp. Fed'n v. Byrd*, 734 F. Supp. 3d 1263, 1267 (N.D. Fla. 2024) (requiring only that "that the official has the authority to enforce the particular provision being challenged.").

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' motion for summary judgment.

Dated: New York, NY
      May 19, 2025

Respectfully submitted,

SELENDY GAY PLLC

By:   */s/     Corey Stoughton*

Daniel J. McNeil
American Federation of Teachers
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel: 202-879-4400
dmcneil@aft.org

Faith E. Gay (FBN 129593)
Corey Stoughton
Hannah R. Miles
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
cstoughton@selendygay.com
hmiles@selendygay.com

Mark H. Richard (FBN 305979)
Phillips, Richard & Rind, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, FL 33173
Tel: 305-412-8322
mrichard@phillipsrichard.com

*Attorneys for Plaintiffs*

## CERTIFICATION OF WORD COUNT

I certify that this memorandum of law contains 7,969 words, including foot-

notes, as calculated by Microsoft Word's word count feature.

Dated:      New York, NY                          Respectfully submitted,
             May 19, 2025

*/s/ Corey Stoughton*
Corey Stoughton
SELENDY GAY PLLC
1290 Sixth Avenue
New York, NY 10104

*Attorney for Plaintiffs*