**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UNITED FACULTY OF FLORIDA, et al.

*Plaintiffs*,

v.

BRIAN LAMB, in his official capacity as
Chair of the Florida Board of Governors, et al.

*Defendants*.

Case No. 1:24-cv-000136-MW-MAF

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................1

ARGUMENT .........................................................................................................1

I.     The Federal Arbitration Act Preempts Florida's Arbitration Ban..................1

     A.     The FAA Applies to a State's Relationship with its Employees ..........1

     B.     The FAA and the Arbitration Ban Conflict...........................................3

     C.     Plaintiffs' Facial Challenge Warrants Relief Invalidating the Arbitration Ban.........................................................................................5

II.     Plaintiffs Have Proven All Factual Allegations in the Complaint and Thus Have Standing.........................................................................................7

     A.     Plaintiffs' Members Have Standing ......................................................7

     B.     Plaintiffs Have Established Traceability and Redressability as to the BOG Defendants ..............................................................................9

III.     Plaintiffs Have a Cause of Action in Equity .................................................11

CONCLUSION ...................................................................................................13

<u>Cases</u>

*31 Foster Child. v. Bush*,
   329 F.3d 1255 (11th Cir. 2003) ..............................................................9

*America's Health Ins. Plans v. Hudgens*,
   742 F.3d 1319 (11th Cir. 2014) ..............................................................5

*Armstrong v. Exceptional Child Center, Inc.*,
   575 U.S. 320 (2015) ...............................................................................11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ...............................................................................11

*Bear Warriors United, Inc. v. Hamilton*,
   749 F. Supp. 3d 1217 (M.D. Fla. 2024) .................................................13

*Chamber of Commerce v. Bonta*,
   62 F.4th 473 (9th Cir. 2023) ............................................................ 5, 11

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013) .................................................................................8

*Crown Castle Fiber v. City of Pasadena*,
   76 F.4th 425 (5th Cir. 2023) ..................................................................12

*Democratic Exec. Comm. of Fla. v. Detzner*,
   347 F. Supp. 3d 1017 (N.D. Fla. 2018) ...................................................8

*EEOC v. Massachusetts*,
   987 F.2d 64 (1st Cir. 1993) ......................................................................3

*EEOC v. Wyoming*,
   460 U.S. 226 (1983) .................................................................................3

*Farmworker Ass'n of Fla., Inc. v. Uthmeier*,
   2025 WL 1133682 (S.D. Fla. Apr. 17, 2025) ........................................12

*Fla. Immigrant Coal. v. Att'y Gen., State of Fla.*,
   2025 WL 1625385 (11th Cir. 2025) .........................................................6

*Ga. Latino All. for Hum. Rts. v. Gov'r of Ga.*,
  691 F.3d 1250 (11th Cir. 2012) ...................................................5

*Garcia v. San Antonio Met. Transit Auth.*,
  469 U.S. 528, 554 (1985)............................................................3

*Garmley v. Cochran*,
  651 F. App'x 933 (11th Cir. 2016) ............................................1

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991)....................................................................3

*Hisp. Fed'n v. Byrd*,
  734 F. Supp. 3d 1263 (N.D. Fla. 2024) ...................................10

*HM Florida-ORL, LLC v. Gov'r of Fla.*,
  137 F.4th 1207 (11th Cir. 2025) ............................................5, 6

*In re Wild*,
  994 F.3d 1244 (11th Cir. 2021) ......................................... 11, 12

*Kindred Nursing Ctr. Ltd. v. Clark*,
  581 U.S. 246 (2017).....................................................................5

*Labrador v. Poe*,
  144 S. Ct. 921 (2024)...................................................................5

*Loper v. Lukis*,
  736 F.Supp.3d 1218 (S.D. Fla. 2024) .......................................6

*Morgan v. Sundance*,
  596 U.S. 411 (2022)..................................................................3, 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).......................................................................2, 3

*Nat'l Rifle Ass'n of Am., Inc. v. Swearingen*,
  545 F. Supp. 3d 1247 (N.D. Fla. 2021) .....................................5

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) .................................................5

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*,
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) ........................................................... 9, 10

*Raygor v. Regents of Univ. of Minnesota*,
    534 U.S. 533 (2002) .......................................................................................3

*Reese v. Herbert*,
    527 F.3d 1253 (11th Cir. 2008) ....................................................................1

*Restoration Risk Retention Grp. v. Gutierrez*,
    880 F.3d 339 (7th Cir. 2018) ......................................................................12

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ....................................................................12

*South River Watershed All. v. DeKalb Cnty.*,
    69 F.4th 809 (11th Cir. 2023) .......................................................................8

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .........................................................................................2

*Transcon. Gas Pipe Line Co., v. 6.04 Acres, More or Less*,
    910 F.3d 1130 (11th Cir. 2018) ..................................................................12

*UAW v. Brock*,
    477 U.S. 274 (1986) .....................................................................................8

*Va. Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247, 256 (2011) ...........................................................................12

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ...................................................................................12

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ......................................................................2

*Wiand v. Schneiderman*,
    778 F.3d 917 (11th Cir. 2015) ......................................................................1

*Wyndham Vacation Ownership v. Catalyst Consulting Firm*,
    2024 WL 556549 (M.D. Fla. Jan. 15, 2024) ..............................................10

## Statutes

Fla. Stat. § 1001.74(2).............................................................................................10

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants declined to file any counterstatement of facts and "agree that there are no material facts in dispute and that this matter can be resolved as a matter of law." Dkt. 48 ("Opp.") at 4. Plaintiffs' facts are therefore "deemed admitted" and the Court should "ignore evidence relied on by the respondent…that yields facts contrary to those listed in the movant's statement." *Garmley v. Cochran*, 651 F. App'x 933, 937 (11th Cir. 2016) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008)).[1]

## ARGUMENT

### I.    The Federal Arbitration Act Preempts Florida's Arbitration Ban

### A.    The FAA Applies to a State's Relationship with its Employees

The Court should not reconsider its prior ruling that the FAA applies to all arbitration contracts unless "overridden by a contrary congressional command." Dkt. 39 ("MTD") at 30 (quoting *Wiand v. Schneiderman*, 778 F.3d 917, 922 (11th Cir. 2015)).[2] Thus, because the FAA contains no exception for state employment, "the

---

[1] Defendants' opposition requests summary judgment in their favor, in violation of Rule 7(b)(1), which requires that parties request affirmative relief in the form of a properly filed motion; not as a portion of a memorandum in support. Opp. at 1; *see* Fed. R. Civ. P. 7(b)(1). Defendants also failed to comply with Local Rule 56.1(b), requiring parties to file motions "at the same time [as] a memorandum…includ[ing] a statement of facts."

[2] Plaintiffs use the defined terms from their opening motion.

FAA applies to those relationships." *Id*. This choice was not an "accidental oversight because Congress did explicitly exempt states from other similar statutes." *Id.* at 31. Defendants admit this, but note that, elsewhere, Congress chose to explicitly include states. Opp. 6-8. This shows only that Congress can manifest its intent to regulate states in multiple ways, not that one way is required. To the extent there is any doubt, the FAA establishes a "liberal federal policy favoring arbitration agreements," such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Defendants cherry-pick FAA legislative history for the proposition that Congress did not intend to "for[ce] an individual State into an unwilling submission to arbitration enforcement." Opp. at 7-8. But Plaintiffs do not contend that the FAA compels Florida to enter into agreements to arbitrate or to arbitrate disputes absent such agreement. The FAA simply requires that state employers and employees remain free to contract for arbitration. This right is valuable; several boards of trustees have signed CBAs that automatically reinstate arbitration if the Ban is overturned, signaling their desire to contract for arbitration. *See* Dkt. 44-17, art. 20.8(e)(3) (FSU); 44-18, art. 20.8(f)(1) (New College).[3]

---

[3] Moreover, there is no role for legislative history here because courts "do not consider legislative history when the text is clear." *Villarreal v. R.J. Reynolds Tobacco*

Defendants continue to be wrong that the "clear statement" rule applies. Opp. at 5-6 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). Courts have rejected this argument, *EEOC v. Massachusetts*, 987 F.2d 64, 69 (1st Cir. 1993), and Defendants cite no relevant case supporting it. As argued in Plaintiffs' prior briefing, Dkt. 24 at 23-25, that rule is limited to statutes that implicate the "heart of representative government." *Gregory*, 501 U.S. at 461. The only new case Defendants cite, *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533 (2002), fits that mold, addressing application of a federal statute that altered the jurisdictional rules of state courts, raising "serious constitutional doubt," *id.* at 544. By contrast, here, it is well established that Congress may regulate states' employment relationships. *See, e.g.*, *EEOC v. Wyoming*, 460 U.S. 226, 243 (1983); *Garcia v. San Antonio Met. Transit Auth.*, 469 U.S. 528, 554 (1985).

## B.    The FAA and the Arbitration Ban Conflict

Defendants assert any conflict between the Arbitration Ban and the FAA rests "upon the faulty premise that the FAA sets forth a policy favoring arbitration." Opp. at 7, 8. But, according to the Supreme Court, the FAA does set forth such a policy.

---

*Co.*, 839 F.3d 958, 969 (11th Cir. 2016). Legislative history also does not support Defendants. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) ("Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."); *see also id.* at 12 ("[T]he House Report contemplated a broad reach of the Act, unencumbered by state law constraints.") (citing H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)).

*See Moses*, 460 U.S. at 24-25 (the FAA establishes a "liberal federal policy favoring arbitration agreements"). Defendants again cite *Morgan v. Sundance*, 596 U.S. 411, 418 (2022), but, as this Court found, the principle that the FAA preempts laws prohibiting arbitration "of a particular type of claim" was not "cabined or overruled by the Supreme Court in *Morgan v. Sundance, Inc.*, as Defendants claim." MTD at 36.

Defendants further argue no conflict exists because the UF CBA's savings clause states that any provision "shall be invalid and have no force or effect, if it…[i]s rendered invalid by reason of any subsequently enacted legislation." Opp. at 9. This tautology fails: if the Arbitration Ban is preempted, the arbitration provision in UF's CBA was never invalidated. Regardless, the savings clause further provides that "this Article is not intended to cede authority to any party to invalidate any provision of this Agreement. UFF does not concede to the constitutionality of any subsequently enacted legislation that invalidates a term of this Agreement.… UFF may choose…to challenge said legislation." Dkt. 44-5 at art. 32.4.

Finally, Defendants argue the FAA cannot preempt the prohibition on future arbitration because the FAA does not compel employers to enter into arbitration agreements. Opp. at 9-10. Defendants fundamentally misunderstand Plaintiffs' case, which requests a ruling that the state may not *ban* boards of trustees and UFF chapters from negotiating for arbitration. Plaintiffs do not ask this Court to compel any party to enter into an arbitration agreement. Defendants also ignore precedent that

the FAA "extends to state rules that discriminate against the formation of arbitration agreements." *Chamber of Commerce v. Bonta*, 62 F.4th 473, 483-84 (9th Cir. 2023) (citing *Kindred Nursing Ctr. Ltd. v. Clark*, 581 U.S. 246, 254-55 (2017)).

### C. Plaintiffs' Facial Challenge Warrants Relief Invalidating the Arbitration Ban

Because the Arbitration Ban and its implementing regulations are preempted in all their applications, the Court should issue the relief Plaintiffs request. *See HM Florida-ORL, LLC v. Gov'r of Fla.,* 137 F.4th 1207, 1248 (11th Cir. 2025) ("[W]hen a court holds a law facially unconstitutional, broad-based relief may follow."). Defendants' assertion that this would be an impermissible "universal injunction," Opp. at 26-27, ignores well-settled rules governing relief in a facial preemption challenge where a statute is "unconstitutional in all of its applications." *Nat'l Rifle Ass'n of Am., Inc. v. Swearingen*, 545 F. Supp. 3d 1247, 1270 n.31 (N.D. Fla. 2021) (Walker, J.); *see, e.g.*, *Ga. Latino All. for Human Rights v. Gov'r of Ga.*, 691 F.3d 1250, 1268–69 (11th Cir. 2012); *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1287–90 (11th Cir. 2013); *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1334 (11th Cir. 2014).

The relief Plaintiffs seek is properly tailored and no "more burdensome to the defendant than necessary to redress the plaintiff's injuries." Opp. at 27 (quoting *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring)). Plaintiff UFF represents faculty at all twelve Florida public universities. Dkt. 46 ¶2. Plaintiffs'

injuries are not limited to "a handful of members who work for UF BOT," Opp. at 27; *all* members have had their arbitration rights nullified, and many have been—or will be—denied arbitration. Dkt. 46 ¶33 n.1; Dkt. 44-3 ¶16. Defendant BOG is the statewide board responsible for the management of the entire public university system. SOF ¶15. A statewide injunction is thus appropriate. *See Fla. Immigrant Coal. v. Att'y Gen., State of Fla.*, 2025 WL 1625385, at *4 (11th Cir. 2025) (finding a statewide injunction appropriate where "the relevant parties to the litigation…are essentially all the people against whom SB 4-C might be enforced"); *HM Florida-ORL*, 137 F.4th  at 1247 ("[T]he concerns we've expressed about…nationwide injunctions are largely absent in this case involving a state law.").

Any other result would be inefficient and burdensome. A more limited injunction would irrationally and arbitrarily distinguish between universities where enforcement of existing arbitration provisions and bargaining for arbitration was permitted or prohibited. It would also "engender needless follow-on litigation," despite that the Arbitration Ban "requires compliance by all [relevant officials] throughout" Florida "regardless of their specific circumstances" and the injunction "is not based on facts limited to Plaintiffs' circumstances." *Loper v. Lukis*, 736 F.Supp.3d 1218, 1240 (S.D. Fla. 2024); *see also Fla. Immigrant Coal.*, 2025 WL 1625385, at *4.

## II.  Plaintiffs Have Proven All Factual Allegations in the Complaint and Thus Have Standing

As the Court previously found, Plaintiffs "have demonstrated associational standing." MTD at 11. Defendants contest that at least one of Plaintiffs' members has or will suffer harm fairly traceable to and redressable by Defendants, but they contest none of the relevant facts, repeating only rejected legal arguments.[4]

### A.  Plaintiffs' Members Have Standing

This Court found that allegations regarding a UF professor who was terminated in February 2024 (now identified as Dr. Oscar Crisalle) would, if proven, demonstrate that "at least one of [Plaintiffs'] members has been or will be imminently injured by the enforcement of section 1001.741(2)." MTD at 12-13. Undisputed evidence now establishes those allegations. *See* SOF ¶33-43. Beyond Dr. Crisalle, Defendants admit that: (1) at least three UF members were terminated, sought and were denied arbitration due to the Arbitration Ban, and continue to attempt to grieve their terminations;[5] (2) at least two members are on PIPs set to expire

---

[4] Defendants do not contest that Plaintiffs meet the second and third requirements for associational standing. *See* Dkt. 46 at 24.

[5] Defendants argue—without support—that the terminated professors are not continuing to seek arbitration. Opp. at 12. Plaintiffs' undisputed evidence shows that "UFF and the UF Chapter are still actively attempting to arbitrate both grievances [filed by Crisalle] and Dr. Crisalle is continuing to pay dues to UFF." Dkt. 44-3 ¶19; *id* ¶22 (Dr. Schneider); *id.* ¶25 (Dr. Shanker).

this summer and, if terminated, each would seek arbitration and inevitably be denied;[6] and (3) members with future grievances will be harmed if Plaintiffs are barred from negotiating for arbitration in future CBAs, including UF's. SOF ¶¶33-43. These harms are more than sufficient: "[T]he rule in this Circuit is that organizational plaintiffs need only establish that at least one member faces a realistic danger of suffering an injury." *South River Watershed All. v. DeKalb Cnty.*, 69 F.4th 809, 819-20 (11th Cir. 2023).

Defendants' standing arguments are nonsensical. Professors who have already been denied arbitration do not have standing because they have already been injured. But professors who have not yet been denied arbitration also do not have standing because they have not *yet* been injured. This misses the point entirely: Plaintiffs have members who have been injured, which shows that similarly situated members with employment grievances will continue to be injured in the future. Therefore, Plaintiffs have associational standing, including for prospective relief. *UAW v. Brock*, 477 U.S. 274, 284 (1986) (finding standing because union's members had been injured, leaving "no question here that among the [union's] members are many such

---

[6] Defendants argue—without factual basis—that the professors currently on PIPs are not likely to be terminated and that Dr. Kroen in particular "does not state any reason why she would be unable to comply with her PIP." Opp. at 13. This is false. *See* Dkt. 44-16 ¶21, 28. It is also irrelevant: the injury is the denial of arbitration rights regardless of the outcome. All three professors were denied arbitration of the post-tenure review evaluations that led to the PIPs. Dkt. 44-4 ¶¶60, 67, 77.

individuals" with standing for prospective relief); *see Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1025 (N.D. Fla. 2018) (Walker, J.).

Many of the cases Defendants cite are about standing for pre-enforcement challenges, where no injury has yet occurred, raising concerns about whether injury is speculative. Opp. at 13-14 (citing, *e.g.*, *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)). These cases are a red herring: Plaintiffs' members have already been injured. Other cases deal with individual plaintiffs, who must show risk of future personal injury for prospective relief. Opp. at 11-12 (citing*, e.g.*, *31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003)). This is another red herring: associational standing for prospective relief is established because Plaintiffs have both members who have been harmed *and* members who will imminently be similarly harmed.

### B. Plaintiffs Have Established Traceability and Redressability as to the BOG Defendants

Defendants fail to provide any reason for the Court to deviate from its prior holding that the BOG's promulgation of Regulation 10.003 establishes traceability and redressability. MTD at 15. Defendants' declaration from a BOG member regarding the promulgation of Regulation 10.003 *supports* the Court's conclusion that the BOG promulgated Regulation 10.003 "to align with the change in the law": the Arbitration Ban. Dkt. 48-1 ¶5.

*First*, Defendants assert that promulgating a regulation does not qualify as enforcement. Opp. at 17-18. As the Court recognized, however, because the Arbitration Ban requires BOG to pass implementing regulations, which led to a regulation binding on all universities, Plaintiffs' injuries are traceable to and redressable by the BOG. *See Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1261-62 (N.D. Fla. 2022). It makes no difference if, as Defendants argue, Regulation 10.003 and the statute impose the same restrictions; the BOG "has the authority to enforce the particular provision being challenged" and thus is a proper defendant. *Hisp. Fed'n v. Byrd*, 734 F. Supp. 3d 1263, 1267 (N.D. Fla. 2024). Defendants argue that the BOG would voluntarily amend its regulation if the law was enjoined, Opp. at 17, 21, but Plaintiffs should not have to rely on Defendants' representations that it would voluntarily act if it were dismissed from the lawsuit; in any case, those representations are irrelevant to the question of standing. Moreover, an injunction reaching the BOG is necessary because the BOG has an independent legal mandate to enforce the Arbitration Ban, including through coercive mechanisms such as funding cuts. *See* Dkt. 46 at 32-33.

*Second*, Defendants claim that Plaintiffs "have presented no evidence that the BOG 'didn't do or fail to do anything that contributed to their harm,'" Opp. at 21, but the UF BOT "admit[ted] that the Board of Governors has instructed the UF Board of Trustees to comply with the Arbitration Ban…to the extent that the Board

of Governors included the language of Fla. Stat. § 1001.74(2) in Board of Governors regulation 10.003(5)(e)." Dkt. 44-6, Resp. 7.

*Third*, Defendants assert that Plaintiffs did not request relief as to Regulation 10.003 and the Court therefore must deny it, relying on *Wyndham Vacation Ownership v. Catalyst Consulting Firm*, 2024 WL 556549 (M.D. Fla. Jan. 15, 2024). Opp. at 16. The plaintiffs in *Wyndham* sought a default judgment, which "must not differ in kind from…what is demanded in the pleadings." Fed. R. Civ. P. 54(c). By contrast, "[e]very other final judgment should grant the relief to which each party is entitled, even if that party has not demanded that relief in its pleadings." *Id.* Regardless, Plaintiffs did challenge the Regulation, *see* Dkt. 1 ¶¶27, 54, including in the Prayer for Relief, which asked the Court to grant "a permanent injunction enjoining Defendants from enforcing the Arbitration Ban in any manner," *id*. at 30.

## III. Plaintiffs Have a Cause of Action in Equity

The Court should not reconsider its ruling that Plaintiffs stated a claim in equity. MTD at 23-28. *First*, Defendants claim "petition[s] to compel arbitration" are the exclusive administrative remedy under the FAA and foreclose private rights of action. Opp. at 22 (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)). Among other radical aspects, this ignores significant precedent recognizing the doctrine of FAA preemption. *See, e.g.*, *Bonta*, 62 F.4th at 481-83 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-47 (2011)). Defendants offer no

support for interpreting the FAA to contain the sort of administrative enforcement scheme required to foreclose equitable remedies, or for the notion that the FAA's description of one private right of action forecloses others. Defendants cite only one new case, *In re Wild*, 994 F.3d 1244, 1259 (11th Cir. 2021), which held that the Crime Victims' Rights Act ("CVRA") did not provide a private cause of action and thus did not permit actions in equity. Opp. at 23. But, unlike the FAA, the CVRA contains multiple clear statements constraining victims to motions for relief in on-going criminal cases, including a subsection literally titled: "No cause of action." *Wild*, 994 F.3d at 1253.

*Second*, Defendants claim that a suit in equity is barred because "the FAA does not grant personal rights." Opp. at 23-25. This Court determined that even if "the FAA does not confer a private right, that finding is not fatal to Plaintiffs' claim in equity because one is not required," MTD at 25; *see also id*. n.5 ("[T]he only limit on equitable power is foreclosure, and there is no rights requirement." (citing *Transcon. Gas Pipe Line Co., v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1152 (11th Cir. 2018))). Defendants urge the Court to reconsider its endorsement of Judge Hartz's concurrence in *Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), Opp. at 24-25, but provide no new justification and ignore that numerous other courts have reached the same conclusion, *see Restoration Risk Retention Grp. v. Gutierrez*, 880

F.3d 339, 345-46 (7th Cir. 2018); *Crown Castle Fiber v. City of Pasadena*, 76 F.4th 425, 434-35 (5th Cir. 2023).

*Third*, Defendants, rely on a Fifth Circuit dissent and a law review article to argue that an *Ex parte Young* action is available only to "direct targets of regulation." Opp. at 26. This is directly contrary to Supreme Court precedent. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256 (2011); *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Courts in this Circuit have already properly rejected this gambit. *Farmworker Ass'n of Fla., Inc. v. Uthmeier*, 2025 WL 1133682, at *12 (S.D. Fla. Apr. 17, 2025); *see also Bear Warriors United, Inc. v. Hamilton*, 749 F. Supp. 3d 1217, 1228 (M.D. Fla. 2024).

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment.

Dated:  New York, NY
        June 16, 2025

Respectfully submitted,

SELENDY GAY PLLC

By: <u>/s/      *Corey Stoughton*</u>

Daniel J. McNeil
American Federation of Teachers
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel: 202-879-4400
dmcneil@aft.org

Faith E. Gay (FBN 129593)
Corey Stoughton
Hannah R. Miles
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
cstoughton@selendygay.com
hmiles@selendygay.com

Mark H. Richard (FBN 305979)
Phillips, Richard & Rind, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, FL 33173
Tel: 305-412-8322
mrichard@phillipsrichard.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that this Reply in Support of Summary Judgment contains 3,114 words, including footnotes, as calculated by Microsoft Word's word count feature.

Dated: New York, New York
        June 16, 2025

Respectfully submitted,

/s/        *Corey Stoughton*

Corey Stoughton